ATLANTA NAT. BUILDING & LOAN ASS'N et al. v. GILMER et al.

(Circuit Court, M. D. Alabama. January 22, 1904.)

No. 190.

1. MORTGAGES—NOTICE OF DEFECTIVE TITLE—POSSESSION AS NOTICE OF EQUITABLE CLAIM.

Residence property was occupied by a mother and her daughters, the legal title being in the daughters, who conducted a boarding house, while the mother occupied a room therein. *Held*, that the possession was presumptively in the daughters, and that one who lent money to them, taking a mortgage on the property as security, being a purchaser for value, was not charged by the joint occupancy of the mother with notice of any equitable right she might have in the property.

2. SAME—ESTOPPEL TO ASSERT EQUITABLE TITLE.

The owner of the equitable title to real estate, who, with full knowledge, permits the holder of the legal title to mortgage the same for borrowed money without objection or notice to the mortgagee, cannot set up such equitable title to defeat the mortgage; nor does a subsequent purchaser through such equitable owner after his title had been established as against the mortgagors, and who bought with notice of the mortgage, stand in any better position.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASER—TAX TITLE.

A purchaser from one holding under a tax deed is as fully protected as a bona fide purchaser for value as one through any other source of title, where the proceedings were regular, and the deed conveyed the legal title.

In Equity. Suit to foreclose mortgage.

Thomas H. Watts, for complainants.
Gordon Macdonald and A. A. Wiley, for defendants.

SHELBY, Circuit Judge. This is a suit to foreclose a mortgage, brought by Jerry W. Goldsmith, a citizen of Georgia, and the Atlanta National Building & Loan Association, a Georgia corporation, against J. M. Dennis, Rebecca C. Gilmer, Eleanor E. Gilmer, Susan W. Jones, and A. E. Pentecost, all citizens of Alabama, except A. E. Pentecost, who is a citizen of Mississippi. The mortgage sought to be foreclosed is made an exhibit to the bill. It was duly executed by the four last named defendants in June, 1891, and was acknowledged by the Misses Rebecca C. and Eleanor E. Gilmer on the 17th day of June, 1891, and

subsequently by the other mortgagors, and was filed in the probate office of Montgomery county, Ala., for record on July 24, 1891, and was duly recorded. The mortgage is to secure the note of the mortgagors for $5,000, which the Atlanta National Building & Loan Association lent to the mortgagors contemporaneously with the execution of the mortgage. The mortgage is on a lot situated in the city of Montgomery, and described as "the east half of lot number five (5) in square number nine (9) in that part of said city known as 'East Alabama,' fronting seventy-five (75) feet on Bibb street, and running back, with the uniform width, along Lee street, 100 feet."

It appears from an agreement of solicitors and from evidence in the cause that Susan W. Gilmer owned the real estate described in the mortgage from 1875 till 1882, when it was twice sold at tax sale. One sale was for state and county taxes, but it appears that the description in the proceedings was inaccurate. In the same year, however, it is agreed that it was sold by regular proceedings for unpaid city taxes due the city of Montgomery; that one Marlin bought and received a deed to the property, which title he afterwards conveyed to one Stoelker, and Stoelker conveyed such title in 1882 to A. Campbell Jones; and that afterwards, on June 17, 1890, A. Campbell Jones conveyed the lot to the four mortgagors. This last deed was recorded in the office of the probate judge of Montgomery county July 10, 1890. It appears, therefore, that the legal title to the property in question was in the four mortgagors at the time they executed the mortgage sought to be foreclosed. This fact is not controverted. It is also admitted that the four mortgagors and their mother, Mrs. Susan W. Gilmer, resided in the house on the property at the time of the execution and delivery of the mortgage. There is conflict in the evidence as to who was in possession of the house and lot, claiming to own it, from the time of the transfer of the tax title to A. Campbell Jones to the date of the mortgage. The evidence of several witnesses tends to show that the mortgagors, after Jones made the conveyance to them, were in possession of the property as owners; that they paid the taxes and used the property as a boarding house, keeping boarders, and collecting the board, and that their mother lived with them, and was supported by them. There is other evidence, however, that tends to show that Mrs. Susan W. Gilmer was holding possession of the property and permitting her daughters to use the same without rent.

Mrs. Gilmer brought suit in the state chancery court in 1892 to have the title divested out of her daughters. This suit was successfully prosecuted by her successors, she dying pending the suit. The lot having been determined to be the property of the estate of Mrs. Gilmer, it was by decree of court sold for division among her heirs, and the defendant Dennis became the purchaser. The decision of the appeal in the case is reported in Waller v. Jones, 107 Ala. 331, 18 South. 277. This decision is, of course, conclusive as between Mrs. Gilmer's estate and her four daughters. The mortgagee (a complainant here) not being a party to that suit, its rights are in no way affected by it. It was not the purpose of Mrs. Gilmer's bill to vacate the mortgage that had been given by her daughters. If she desired to avoid the mortgage, it was not shown in that case nor in this one. When the defendant Dennis

bought the lot, the mortgage in suit here was registered in the proper office, and he is charged with notice of it.   I find no evidence in the record that the mortgagee at the time it lent the $5,000 on the mortgage, had notice of any claim of Mrs. Susan W. Gilmer to the property. The defendant Dennis contends that Mrs. Gilmer's possession of the property was notice to the mortgagee of her rights.   He asserts that the possession of the lot by her was constructive notice of her equitable claim.   It is true that actual, open, notorious, exclusive, and unambiguous possession by Mrs. Gilmer would have been notice to the mortgagee of her claim.   2 Pomeroy's Eq. (2d Ed.) § 620.   But is it shown that Mrs. Gilmer had such possession?   It is agreed that the four mortgagors and their mother occupied the house, and the evidence shows that the daughters were exercising acts of ownership at the time the mortgage was given.   It is true that there is also evidence tending to show that Mrs. Gilmer was claiming possession and exercising acts of ownership.   If there had been no recorded title in favor of her daughters on this state of the evidence, the position of the defendant Dennis would have been better than it now is.   But the four daughters also lived in the house, and the recorded legal title to the premises was in them.   Under such circumstances it seems to be the unquestioned rule that the possession is presumptively that of those who have the legal title.   Where the actual possession is joint, and one of the joint possessors is vested with the legal title, the possession is considered that of the one who has the title.   The possession of the other, who has no title, is no notice of any claim he may have.   McCarthy v. Nicrosi, 72 Ala. 332, 334, 47 Am. Rep. 418; 3 Washburn on Real Prop. 138; Preston v. McMillan, 58 Ala. 84, at page 91.   Mrs. Gilmer's occupancy of a room in the house was not inconsistent with the title of her daughters, they also occupying the house under a recorded deed, and using it as a boarding house.   The possession that will charge a purchaser with notice must be unambiguous, and not liable to be misunderstood or misconstrued.   The joint occupation of the claimant of an equity with the holder of the legal title is not notice of the claim of the former.   Kirby v. Tallmadge, 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463; Townsend v. Little, 109 U. S. 504, 3 Sup. Ct. 357, 27 L. Ed. 1012; 23 A. & E. Enc. of Law, 509.

Jones obtained title to this property through the tax sales in 1882, and he conveyed it in 1890 to the mortgagors, who executed the mortgage in 1891.   Mrs. Gilmer took no steps to redeem the property or to vacate the tax sales until 1892, after her daughters had executed the mortgage and obtained the $5,000.   It is clearly proved, and without conflict, that pending the negotiations to secure the loan Mrs. Gilmer knew of the fact that the money was to be borrowed.   This is shown by the testimony of six witnesses—her four daughters (the mortgagors), A. Campbell Jones, and Charles Wilkinson.   She could have prevented the loan by asserting her claim, but she did not assert it; or she could have protected her equitable interest against the mortgage by giving notice of her claim.   Her mere occupancy of a room in the house, asserting no claim to the property which came to the notice of the mortgagee, cannot be construed as a notice to the mortgagee of her equity. Knowing that the money was to be borrowed; that a mortgage was to

be given on the property; that her daughters, who were to borrow the money, had the legal title to the property—she acquiesced in the arrangement, and made no objection until the money was secured. Afterwards to assert her claim as superior to that of the mortgagee would have been inequitable and unjust. That she did not intend to contest the mortgage is shown by her subsequent acts, for when she filed a bill to vacate the title she did not make the mortgagee a party to the suit and pray to have the mortgage vacated. The uncontradicted evidence that Mrs. Gilmer knew of the purpose of her daughters, who held the legal title to the lot, to mortgage it to borrow money, and that she made no objection, strongly corroborates the contention of the complainants that she was asserting no claim to the property, and that the actual possession and control of the lot at the date of the mortgage was in the mortgagors.

When the defendants fail to prove facts that charge the mortgagee with notice of Mrs. Susan W. Gilmer's equitable claim to the property, the mortgagee stands as a purchaser for value without notice. As against her four daughters, Mrs. Gilmer had a good claim to the lot. This is now res judicata as between her and them. Waller v. Jones, 107 Ala. 331, 18 South. 277. But the mortgagee, having no notice of her equities, had a right to rely on the legal title shown by the record to be in the mortgagors. Jones quotes and approves Lord Hardwicke, who said: "When I speak of a purchaser for a valuable consideration, I include a mortgagee, for he is a purchaser pro tanto." 1 Jones on Mortgages, § 458; Id. § 549. A mortgage taken to secure a debt contemporaneously contracted constitutes the mortgagee a purchaser for a valuable consideration, who will be protected in equity against outstanding claims or incumbrances of which he had no notice. Wells v. Morrow, 38 Ala. 125; Whitfield v. Riddle, 78 Ala. 99; Alston v. Marshall, 112 Ala. 638, 20 South. 850; 23 A. & E. Enc. of Law, 476.

It is urged in defense of this suit by the solicitors of the only defendant who contests the foreclosure that the mortgage cannot be foreclosed so far as the interests of Mrs. S. W. Jones and Mrs. A. E. Pentecost are concerned, because they were married women at the time of the execution of the mortgage, and that their husbands did not join in the mortgage, as required by the Alabama statute. In reply the solicitor for the complainants in his brief says:

"It is really not of much importance whether it be held that the mortgage is good or bad as to the two quarter interests of Mrs. Jones and Mrs. Pentecost, because, the property being worth $20,000, a half interest is worth $10,000—more than enough to pay complainants in full; and, as the obligation of the four daughters was joint, each of them, and the property or interest of each, is liable for the whole debt."

As the complainants are content to have the mortgage foreclosed on the interest in the lot vested at the date of the mortgage in the two Misses Gilmer, it is unnecessary to decide whether the mortgage is a valid charge or not on the shares of the two married women mortgagors.

A decree will be entered foreclosing the mortgage on the one-fourth interest of Eleanor E. Gilmer and on the one-fourth interest of Rebecca C. Gilmer in the lot described in the mortgage.

## On Rehearing.

Since the foregoing opinion was written, the solicitors for the defendants, with leave of the court, have filed additional briefs. I have carefully examined the new authorities which have been cited, and have not found any good reason for disturbing the conclusion to which I had come.

1. It has been again urged on the attention of the court that the possession of Mrs. Gilmer was sufficient to put the complainants on notice. The case of Watson v. Murray, 54 Ark. 499, 16 S. W. 293, is cited as sustaining that contention. It is true that it appears in that case that the mother and the son occupied the house on the real estate in question, with the legal title in the son, and that it was held, under the circumstances of the case, that the possession of the mother was notice of her equitable interest to the vendee of the son. The facts, however, of the case, as showing the character of the mother's possession, are very different from the facts in the case at bar. The son was a minor, living with his mother, she being the head of the family. The court found that there was "not a circumstance to indicate that she or her neighbors regarded her occupancy of the premises as being by the permission or sufferance" of her son. "She was the head of the family, and no one could reasonably have ascribed the actual possession of the property to her minor son, rather than to herself." It does not appear that the son had been emancipated from her control. On the contrary, the court said that "he was a minor, living with his mother, and that she was entitled to all of his earnings." The solicitors for the complainants call attention to the fact that his disabilities as a minor had been removed. But an examination of the case shows that when he was about 16 years of age, upon the application of his mother, "the disability imposed by his minority was so far removed as to enable him to execute a deed" to a purchaser of certain real estate not involved in the suit, the title to which was in him at that time. After that he lived with his mother as a member of her family, and under such circumstances that she was legally entitled to his earnings. It was a case in which the mother alone was in possession. The court observed that, if her possession was not in the "strictest sense exclusive," it was sufficiently marked and ostensible to put Murray upon inquiry, and to charge him with notice of her equitable estate. We do not think the court in that case intended to depart from the well-settled doctrine that, where the actual possession of the real estate is joint, and one of the joint possessors is vested with the legal title, the possession is considered that of the one who has the title. As I understand the opinion, the court has only decided in that case that the actual possession was in the mother, and not in the son. In the case at bar the evidence, I think, shows that at the date of the mortgage the property was in the possession of the mortgagors. And therefore Mrs. Gilmer's occupancy of a room in the house was not inconsistent with the title of the mortgagors, they being in actual possession, and using the house as a boarding house.

Much has been said in the briefs about the relationship that existed between the occupants of the house. In Rankin v. Coar, 46 N. J. Eq. 566, 22 Atl. 177, 11 L. R. A. 661—a case in many of its features very

much like the one at bar—it is shown that the relationship of the occupants of the house, instead of having a tendency to excite inquiry on the part of the mortgagee, would have directly the contrary effect. The court said:

"The true rule is that, when the occupation by one is not exclusive, but in connection with another, with respect to whom there exists a relationship sufficient to account for the situation, and the circumstances do not suggest an inconsistent claim, then such a possession will not give notice of a right by unrecorded grant. It will be neither open, notorious, nor unequivocal."

2. The position is also taken that the complainant, as mortgagee, cannot be an innocent purchaser without notice, because the mortgagors held under a tax title. Many authorities are cited bearing on questions relating to the infirmities of tax titles. Consideration of these questions, however, is excluded by the agreement upon which the case is submitted for decision. It is agreed that the property was sold by regular proceedings which carried the title. As I understand the sixth section of the agreement upon which the case is submitted, it shows that the legal title was in the mortgagors at the time they executed the mortgage, and that there was no infirmity in the proceedings by which the property was sold for city taxes. If the mortgagee had examined the record before accepting the mortgage, it would have found that the legal title was in the mortgagors.

3. I cannot concur in the contention of the learned solicitors for the complainants that "a purchaser from one holding under a tax deed cannot become a bona fide purchaser for value without notice." If the proceedings are regular, so that the deed carries the legal title (and that is the agreement here), it is entitled to as much consideration as any other conveyance of title. In Hefner v. Northwestern Life Ins. Co., 123 U. S. 747, 751, 8 Sup. Ct. 337, 31 L. Ed. 309, the court said:

"If a tax deed is valid, then from the time of its delivery it clothes the purchaser not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them."

A decree will be entered for the complainants as directed in the former opinion.