O'CONNELL *v.* ST. LOUIS JOINT STOCK LAND BANK.

Opinion delivered March 22, 1926.

1.  BANKS AND BANKING—FEDERAL FARMS LOAN ACT—CONSTRUCTION.
—The Federal Farms Loan Act, § 24 (Barnes' Fed. Code, § 9333),
providing that a mortgagor borrowing from a Federal land bank
shall have 30 days after notice of his default to make good said
default, has no application to mortgage loans made by joint stock
land banks directly to borrowers.

2.  MORTGAGES—ACCELERATION CLAUSE—ELECTION OF MORTGAGEE.—
Under the usual acceleration clause, a mortgagee may declare
the principal debt to be due at once upon failure of the mort-
gagor or his assignee to pay any installment of the debt when
due.

3.  MORTGAGES—APPOINTMENT OF RECEIVER—NOTICE.—Under Craw-
ford & Moses' Dig., authorizing the appointment of a receiver in
an action to foreclose a mortgage "where it appears that the
mortgaged property is in danger of being lost, removed or mate-
rially injured, or that the conditions of the mortgage have not
been performed, and that the property is probably insufficient
to discharge the mortgage debt," there is no requirement that
notice of the appointment of a receiver be given, though it is
desirable that it be given.

4.  MORTGAGES—FORECLOSURE—IMPOUNDING OF RENTS AND PROFITS.—
While a mortgage on land does not include crops, the mortgagee
is entitled to impound the rents and profits from the time of the
commencement of a suit to foreclose, where it is shown that
the value of the land is insufficient to discharge the mortgage debt.

5.  MORTGAGES—REMEDIES FOR PAYMENT OF TAXES.—Taxes on mort-
gaged land are a paramount lien, and when paid by the mort-
gagee or the receiver, when appointed, they assume the same
status as the mortgage debt, and the same remedies against the
land and the impounded rents and profits thereof are available
for the payment of the same.

6.  MORTGAGES—SUBSEQUENT LIENS.—All subsequent mortgage liens,
either on land or crops, are subordinate to the rights of the
first mortgagee, as they stand in the same relation toward the
latter as the mortgagor, to whose rights they succeed.

7.  MORTGAGES—FUTURE CROPS—CONSTRUCTION OF STATUTE.—Craw-
ford & Moses' Dig., §§ 7391-2, authorizing mortgages on future
crops to be planted within the year, did not empower the mort-
gagor to create a lien on the property in excess of his interest
therein.

Appeal from Little River Chancery Court; *C. E. Johnson,* Chancellor; affirmed.

*DuLaney & Steel* and *Seth C. Reynolds,* for appellant.

*W. E. Rhea,* for appellee.

McCulloch, C. J. Appellee is a joint stock land bank, authorized to do business under the Federal statute approved July 17, 1916 (Barnes' Federal Code, p. 2229), and it instituted this action to foreclose a mortgage on lands, and to impound the rents and profits during the pendency of the suit by the appointment of a receiver in order to subject the same to the payment of the mortgage debt.

On June 24, 1922, Thomas W. Lacy executed to appellee a mortgage on the lands in controversy to secure a debt in the sum of $30,000 for borrowed money, evidenced by semi-annual installment notes in the sum of $1,050 each, payable on the amortization plan on the first day of February and the first day of August of each year, the last payment to be made in the year 1955. The mortgage contained an acceleration clause to the effect that failure to pay any installment when due would render all of the installments due at the option of the holder. Lacy paid the semi-annual installments falling due and accruing up to and including August 1, 1923, and on October 23, 1923, Lacy conveyed the lands to appellant, M. J. O'Connell, subject to the mortgage debt to appellee. The installment maturing February 1, 1924, was not paid, and appellee elected to declare the whole of the mortgage debt due according to the terms of the mortgage and instituted this action on March 5, 1924, to foreclose. Lacy and his wife, together with O'Connell, were joined as defendants.

The mortgaged lands were situated in a levee district, and there was a default in the payment of the levee taxes for the year 1923 in the sum of $300.75.

Appellant O'Connell, soon after his purchase of the land from Lacy, took possession of the farm and made preparations to operate it by cultivating a portion of it himself, and renting the remainder to tenants. He rented

a portion of the land to J. F. DeLoney, who, prior to the
commencement of the action, began farming operations
by plowing some of the land. O'Connell also made simi-
lar preparations, but at the commencement of the action
the chancellor, in vacation, appointed a receiver to take
charge of the lands and impound the rents and profits
during the pendency of the action. The appointment
was made on application of appellee, and upon *ex parte*
showing that the lands were insufficient in value to pay
the mortgage debt, and that the lands were deteriorating
in value on account of lack of proper attention and on
account of the fact that a considerable portion of the
levee which protected the lands from inundation had been
broken, and some of the lands had caved into the river.
The receiver immediately took possession of the lands
and operated the same during the year 1924, until the
date of the foreclosure sale.

On January 15, 1924, O'Connell executed a mort-
gage to the First National Bank of Ashdown on all of
his interest in crops to be raised during that year to
secure a debt of $2,900 for borrowed money. On Febru-
ary 1, 1924, O'Connell executed a mortgage to the Com-
merce Trust Company of Kansas City to secure $10,000,
and both of these concerns intervened in the action,
claiming the crops under their respective mortgages. It
appears from the pleadings and proof that the First
National Bank of Ashdown furnished O'Connell $2,000
under the mortgage, and that the Commerce Trust Com-
pany of Kansas City furnished him $3,500. O'Connell
did not, however, cultivate any crop on the farm, for the
reason that possession was taken from him by the
receiver.

On final hearing of the cause, there was a decree in
favor of appellee for the amount of the debt, and a sale
was ordered to pay the debt and the taxes, general and
special, which had been paid by the receiver. The rents
and profits of the land were collected by the receiver and
accounted for to the court in his report, which showed
that he had expended in the payment of taxes, general

and special, and in discharge of the salary of the receiver, and for making certain repairs, the total sum of $2,741.23. The court in its final decree directed the receiver to pay those items out of the rents and profits collected, and directed that the balance should be paid over to the First National Bank of Ashdown and the Commerce Trust Company of Kansas City on their respective mortgage debts, in the order named. Appeals have been prosecuted to this court by O'Connell, and by the First National Bank of Ashdown and the Commerce Trust Company of Kansas City.

The first contention is that appellee's action to foreclose was premature. There is no controversy as to the validity of the mortgage or the terms thereof, nor is there any dispute as to there being a default in the payment of the installment falling due February 1, 1924, but the contention of counsel for appellants is that the effect of the Federal statute, *supra*, under which appellee was doing business, allowed thirty days' grace on the payment of installments and required thirty days' notice to be given of default before there could be a foreclosure. Counsel rely upon section 24 of the Federal Farms Loans Act (Barnes' Federal Code, § 9333), which reads as follows:

"If there shall be default under the terms of any indorsed first mortgage held by a Federal land bank under the provisions of this act, the national farm loan association or agent through which said mortgage was received by said Federal Land Bank shall be notified of said default. Said association or agent may thereupon be required, within thirty days after such notice, to make good said default, either by payment of the amount unpaid thereon in cash, or by the substitution of an equal amount of farm loan bonds issued by said land bank, with all unmatured coupons attached."

Counsel are mistaken in assuming that the statute quoted above has any application to the operation of a joint stock land bank, for it applies exclusively to loans made by Federal Land Banks. It is true, as contended by

counsel, that the operations of joint stock land banks are authorized and controlled by the Federal Farm Loans Act, the same as the operations of Federal Land Banks. There is a provision in the statute that joint stock land banks "shall be organized subject to the requirements and under the conditions set forth in section 4 of this act, so far as the same may be applicable." It does not follow, however, that § 24, *supra,* has any application, for it is manifest that it has none. It will be noted that § 24 merely provides for notice by a Federal Land Bank to "a national farm loan association or agent through which said mortgage was received" of any default, and that this requirement applies only to "any indorsed first mortgage held by a Federal Land Bank." The mortgage in question was not made to a Federal Land Bank, nor was it indorsed by any national farm loan association or agent, but it was a loan made directly by appellee to the borrower. Under the Federal statute loans are made by Federal Land Banks through local associations known as national farm loan associations, or, in a locality where no such association has been organized, loans may be made through incorporated banks, trust companies, mortgage companies or savings institutions which have been employed as agents by the Federal Land Bank. The mortgages executed to the Federal Land Bank are indorsed by the national farm loan association or agent through whom the same is made. Barnes' Federal Code, § 9323. On the other hand, loans are made by joint stock land banks directly to borrowers, and not through agents or associations specified in the statute.

It necessarily follows from this analysis of the statute that the section relied on by counsel for appellant has no application whatever to a foreclosure of a loan made by a joint stock land bank. Under the acceleration clause in the mortgage appellee had the right to exercise the option to foreclose the whole of the debt, and this was done. Therefore the action to foreclose was not prematurely instituted.

It is next contended that the receiver was wrongfully appointed. There is a charge that the appointment was procured through fraud, but we discover no evidence whatever to justify the charge. The statute (Crawford & Moses' Digest, § 8612) authorizes the appointment of a receiver in an action to foreclose a mortgage "where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the conditions of the mortgage have not been performed, and that the property is probably insufficient to discharge the mortgage debt." The statute does not require notice of the application for appointment, though it is desirable practice for the chancellor to require notice to be given. It appears that grounds were shown for the appointment in that the value of the lands was deteriorating, and was insufficient to pay the mortgage debt. The receiver was therefore legally appointed, and appellee was not responsible for his conduct in the management and operation of the impounded property. If there were any just complaints against the action of the receiver, the remedy was solely against him and the sureties on his bond. *Robinson* v. *Ark. Loan & Trust Co.,* 74 Ark. 292.

It is contended by the appellants, who were interveners claiming the proceeds of the crops under mortgages executed by O'Connell, that they are entitled to priority in the distribution of the rents and profits collected by the receiver, and that the court erred in appropriating the same, first to the payment of taxes on the lands, and to the expenses of the receivership. The contention is that Lacy's mortgage to appellee did not embrace the crops produced on the land; that the taxes on the land, general and special, were not liens on the crops, and that the holders of the chattel mortgages on the crops were entitled to the proceeds. This contention ignores settled principles of law. It is true that a mortgage on land does not include crops, but the mortgagee is entitled to impound the rents and profits from the time of the commencement of the suit to foreclose where it is shown that the value of the land is insuf-

ficient to cover the mortgage debt; and the taxes on the land, being paramount liens, the payment thereof by the mortgagee or by the receiver, when appointed, assumes the same status as the mortgage debt, and the same remedies against the land and the impounded rents and profits thereof are available for the payment of the same. *Gailey* v. *Ricketts,* 123 Ark. 18; *Osburn* v. *Lindley,* 163 Ark. 260; *Oliver* v. *Deffenbaugh,* 166 Ark. 118; *Bank of Weiner* v. *Jonesboro Trust Co.,* 168 Ark. 859; *Deming Inv. Co.* v. *Bank of Judsonia, ante* p. 65; *Wood* v. *Bigham, ante* p. 253.

In *Osburn* v. *Lindley, supra,* we said: "The bringing of this action and the petition asking for the appointment of a receiver to take charge of the rents and profits of the lands on which the vendor's lien existed had the effect of impounding the proceeds of those rents and profits in the hands of the receiver for the benefit of the vendor, to be appropriated in satisfaction of the decree in his favor for the purchase money. The rents and profits of the lands, after their sequestration by the institution of this suit and the appointment of a receiver, stand in the same category as the land itself. A vendor's lien in equity is of the same nature as a mortgage, and is treated and enforced as such." This rule was repeated in the more recent case of *Bank of Weiner* v. *Jonesboro Trust Co., supra,* which was a suit to foreclose a mortgage, and in the opinion it was said: "Appellee was entitled, under the allegations of the complaint, to have a receiver appointed to take charge of the land (§ 8612, Crawford & Moses' Digest), and when he did so this action resulted in impounding the unsevered crops then growing on the land." It is true that in that case there was no valid intervening chattel mortgage, but the effect is the same, even though there be a valid chattel mortgage, unless the mortgagor is permitted to remain in possession and cultivate the crop in the same relation as when the mortgage was executed. All subsequent mortgage liens, either on the lands or crops, are subordinate to the rights of the first mortgagee, the holders thereof standing in

the same relation toward the latter as the mortgagor, and succeeding only to his rights. The facts in the present case are that O'Connell did not remain in possession of the lands and cultivate a crop, but was legally ousted by the receiver, who took possession as an officer of the court. There was no crop made by O'Connell for the respective chattel mortgages to cover, for the crops on the place were raised, not by O'Connell, but by the receiver and his tenants.

Counsel for appellant attach too much importance to the statute of this State (Crawford & Moses' Digest, §§ 7391-7392) authorizing mortgages on future crops to be planted within the year. The only effect of this statute is to render such a mortgage a valid lien at law, and the statute does not have any further effect than that. It does not work any change in the law with reference to the subject-matter of the chattel mortgage, so far as the enlargement of the power of the mortgagor to create a lien on the property in excess of his interest therein is concerned. The fact that the mortgagor was, at the time of the execution of the chattel mortgage, in actual occupancy of the land on which the mortgaged crop was to be grown did not afford grounds under the statute to extend the lien to crops grown by other persons after the mortgagor had been legally dispossessed. In other words, the mortgage executed by O'Connell did not extend to crops raised by other persons after the receiver took possession of the land. There are none of our decisions which conflict with the views now expressed, and those cited by counsel for appellant are inapplicable.

The distribution of the rents and profits by the court in its decree was more favorable to the interveners than they were entitled to in giving them the surplus over and above the taxes and expenses of the receivership, but there has been no appeal prosecuted from that feature of the decree; hence we are not called on to review it.

Decree affirmed.