WILKENING *v.* LAYNE-ARKANSAS COMPANY.

Opinion delivered June 3, 1929.

*M. F. Elms,* for appellant.

*John W. Moncrief* and *A. G. Meehan,* for appellee.

SMITH, J. August W. Wilkening, a nonresident, owned a rice farm near Stuttgart, and early in 1925 received a letter from Ray O. Burks of that city, proposing to purchase the farm. Burks has for many years been in the real estate business, but his letter contained no intimation that he desired to purchase the farm for another person. A reply to this letter resulted in an extended correspondence, much of which is copied in the briefs of opposing counsel.

The farm was in bad repair, and Burks did not propose to make a cash payment. His proposition involved a sale on long time, and he wrote that: "As a first payment I will agree to install a complete irrigation well, and repair the house, barn and granary. It will cost something over $5,000 to make these improvements, which will make the place in good condition and secure the deferred payments." He also wrote that: "It would be perfectly safe for you to make such a deal, as the improvements will be made, and I will furnish you a statement from the contractors that there will be no lien against them whatsoever."

Wilkening accepted the proposition and turned the matter over to his attorneys, Messrs. Springer & Buckley, Edwardsville, Illinois, to work out the details, and these gentlemen, in turn, engaged Floyd Wingo, a local attorney in Stuttgart, to assist in closing up the deal. The details had all been agreed upon before Burks disclosed to Springer & Buckley the fact that he did not propose personally to buy the farm, and that he was acting for L. E. Strickler, and Burks testified that he was never at any time the agent of Wilkening, and the testimony shows that he was not. He was at all times the agent of Strickler. As the negotiations progressed under the agreement, Burks arranged with the Layne-Arkansas Company to drill the well and to install a pump and motor, and with the J. I. Porter Company to furnish the building materials to make the repairs which he had proposed to make, and on February 6, 1926, Burks wrote Springer & Buckley as follows: "We are ready to go ahead and make improvements and take over the Wilkening farm. We are going to get the Layne-Arkansas Company to fix the well, and we can get a statement from them that they have no liens against the property, as well as furnish a statement from the J. I. Porter Company, that we are going to buy the material from to fix the house, that they will not hold any liens against the property. In other words, you are rather

precautious about protecting Mr. Wilkening's interest." As this quotation indicates, the attorneys had imposed this requirement, and, in addition, had suggested that a bond be made indemnifying Wilkening against any lien claims.

Burk's letter to the attorneys continued: "I have given you the biggest bank here, where I have been doing business for 20 years, as reference, and if you do not care to handle this this way, we will let the matter drop, as we are not going to put up a bond for these improvements. In order to do what is right, we are going to get Layne-Arkansas Company to fix the well and J. I. Porter Company to furnish the material, and you can ask either one of them whether or not they will not be willing to carry us for the account, as well as the bank. This should satisfy Mr. Wilkening, as we are not here to try to place liens against Mr. Wilkening's property, but carry this deal out in a business way, as we always do."

Upon receipt of this letter, and after communicating with their client, the attorneys wrote Burks a letter accepting his proposition, and in this letter they summarized the contract as they understood it, as follows: The purchase money notes should be secured by a first mortgage; the buildings should be repaired and painted; and the pump, with electric motor, was to be installed; and "it shall be agreed that all improvements made on said real estate, including electric motor and pump, shall be taken, considered and held as part of the real estate, and shall be included in the mortgage given to secure the payment of the balance of the purchase price, and if it is necessary, under the laws of Arkansas, to give a chattel mortgage in order to secure a lien for the payment of said notes on said electric motor, fixtures and pump, the same shall be given in addition to the real estate mortgage on said real estate. All of said equipment work and reconstruction work, however, to be done at your cost and expense. It is further understood that you

are to purchase the equipment for such plant aforesaid and other improvements from the Layne-Arkansas Company and from the J. I. Porter Company, and that they are to furnish, before such equipment or materials are delivered on said premises, a release agreement agreeing that they will look to you for the payment of the amount due therefor, and that they will not claim any lien on said premises therefor, and release and waive the right to claim any such lien." All parties treated this letter as stating correctly the terms of sale, and, pursuant thereto, the local attorney at Stuttgart prepared an escrow agreement whereunder the deed might be delivered. The escrow agreement was dated March 24, 1926, and the parties thereto were Wilkening and Burks and the Exchange Bank & Trust Company, of Stuttgart, and recited that Wilkening had contracted to convey to Burks, "or such persons as he may direct," the farm herein referred to, for the consideration of $9,600, of which amount $1,000 was to be paid the first of each year, beginning January 1, 1927, until the 1st of January, 1932, at which time $4,600 was to be paid. The contract recited the improvements which Burks had contracted to make, and that "all of said improvements so to be done at the cost and expense of the said Ray O. Burks or his assigns."

The escrow agreement recited that Burks had authorized the deed to be made to Strickler, and the escrow agent was authorized to deliver the deed to him when advised by Wilkening's attorney at Stuttgart that the following conditions had been complied with: The houses repaired and painted, and the well drilled and the pump and motor installed, "all as provided in a certain contract entered into by and between L. E. Strickler and the Layne-Arkansas Company, dated February 19, 1926; * * * all of said improvements so to be done at the cost and expense of the said Ray O. Burks or his assigns."

To carry out his contract with Wilkening, Burks negotiated a contract between Strickler and the Layne-

Arkansas Company, whereby the latter contracted to drill an irrigation well and to equip same with pump and motor for the consideration of $5,500, of which $2,500 was to be paid in cash, and "balance to be covered by note and chattel mortgage on one-half of all rice grown under this well for the year 1926, subject to Arkansas Light & Power Company claim for current and line charges; and further, if said note is not paid from the 1926 crop, then in that case purchaser will continue to give the same security until the above is paid out on account of contractor releasing title to all equipment."

The local attorney was shown this contract between Strickler and the Layne-Arkansas Company, and Springer & Buckley were acquainted with its provisions, and the manager of the Layne-Arkansas Company testified that he drilled the well and installed the pump and motor upon the faith of this contract, believing that it gave him a continuing right to a mortgage on the rice crop until the debt of his company was paid.

Upon the delivery of the deed the Layne-Arkansas Company wrote the following letter:

"Mr. August Wilkening,
c/o Floyd Wingo,
Stuttgart, Ark.

"Dear sir: This is to advise you that we have released title on well and pump and motor which was installed for Mr. L. E. Strickler on the farm purchased from you.

"Yours truly,
"Layne-Arkansas Co.
"By C. D. Woodburn, V. P."

The Porter company wrote a similar letter about the same time in regard to the building material.

After receiving his deed, Strickler executed mortgages on the rice crop for the years 1926 and 1927, but he made default in his payments to Wilkening, and also neglected to pay the taxes for either 1926 or 1927. On January 20, 1928, Strickler executed to the Layne-Ark-

ansas Company a chattel mortgage on the rice crop, which was filed for record January 23, 1928. On February 6, 1928, Wilkening brought this suit to foreclose his mortgage lien, and on February 13, 1928, a receiver was appointed, who took charge of the land. Strickler appears to have abandoned the land about this time, and to have left the State without having planted the crop upon which he gave the mortgage. The receiver marketed the rice crop, which appears to have been raised by a man who had been a tenant of Strickler, and made a report of the proceeds of the sale thereof to the court.

The Layne-Arkansas Company intervened in this foreclosure suit, and prayed that its mortgage lien be enforced against one-half of the net proceeds of the sale of the 1928 rice crop, and that relief was granted. It was also decreed that the intervener "is entitled to similar security for the year 1929 upon rice crop grown upon said land in said year," and that the intervener is entitled to a vendor's lien upon rice crops of subsequent years until said indebtedness is fully paid, and the receiver of the court was ordered to retain control of the land until the indebtedness due the intervener was paid.

By way of explanation of this decree, which was rendered December 3, 1928, the finding of fact is there made that the sales contract between Wilkening and Strickler contained a specific reference to the contract executed by the Layne-Arkansas Company and Strickler, and, as the Layne-Arkansas Company had waived its right to a lien under the statute, equity required that the mortgage lien for which it had contracted in lieu of the statutory lien be enforced.

The decree of foreclosure was rendered on March 5, 1928, and a sale was had under this decree on April 14, 1928, and at this sale Wilkening became the purchaser. This sale was duly confirmed December 3, 1928. At the time of the rendition of the decree of foreclosure the hearing on the intervention of the Layne-Arkansas

Company was continued to the December, 1928, term, at which time a decree was rendered as above stated.

We think it was error to decree that the intervener had any interest in the 1928 rice crop, and even more erroneous to decree it an interest in future crops. The effect of this decree is to annul the release contained in the letter of the Layne-Arkansas Company to Wilkening's attorney, set out above.

We think every writing offered in evidence in this case, and the other testimony as well, makes it plain that Wilkening conveyed his land without receiving a cash payment, upon the condition that he have a first lien upon the land and the improvements placed thereon, and this he does not have if another party is to be given the rents until the improvements placed by the intervener on the land are paid for. It is true, as the court found and as counsel argues, that Wilkening's agent knew of the contract between Strickler and the intervener, Layne-Arkansas Company, but we think the purpose of communicating this information was not to subordinate Wilkening's lien to that of the intervener, but rather to advise that the improvements would be and had been placed upon the land. It was this assurance which induced Wilkening to sell his land and to surrender its possession without receiving a dollar of purchase money. We find the fact to be that there was no agreement or understanding on the part of Wilkening that his lien should be subordinate to that of any other person for any purpose.

It was of course contemplated that Strickler should give chattel mortgages on his interest in the rice crops which his tenants grew from year to year until the proceeds from this share sufficed to pay the debt of the intervener; but, so far, at least, as Wilkening is concerned, this agreement contemplated that Strickler should not make default in making the payments required by his deed, and would pay the taxes.

It has been adjudged—and no one complains of the adjudication—that Strickler defaulted in paying the taxes and all the purchase money notes which had matured at the time of the institution of the foreclosure suit.

The receiver was appointed, not only before the 1928 crop was severed, but before it was planted. In the case of *Bank of Weiner* v. *Jonesboro Trust Co.*, 168 Ark. 859, 271 S. W. 952, it was held (to quote a syllabus) that: "Where a mortgagee of land brings suit to foreclose his mortgage and procures the appointment of a receiver to take charge of the land, this has the effect of impounding the unsevered crop then growing on the land." See also *Osburn* v. *Lindley*, 163 Ark. 260, 259 S. W. 729; *O'Connell* v. *St. Louis Joint Stock Land Bank*, 170 Ark. 778, 281 S. W. 385.

It is therefore clear that the agreement between Strickler and the Layne-Arkansas Company for future mortgages could in no event affect the 1928 crop.

The decree of the court below will therefore be reversed, and the cause remanded with directions to dismiss the intervention.