## SIMS v. JAMISON.
### No. 7177.

Circuit Court of Appeals, Ninth Circuit.
Nov. 6, 1933.

Joseph, Haney & Veatch, of Portland, Or., and Watts & Prestbye, of Athena, Or., for appellant.

Raley, Raley & Warner, John F. Kilkenny, and Alfred F. Cunha, all of Pendleton, Or., and James H. E. Scott, of Milton, Or., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court enjoining the appellant from harassing and annoying the bankrupt on account of a certain chattel mortgage given by the bankrupt to M. G. Bentley and later assigned to the First National Bank covering the apple crop grown, or to be grown, on certain real estate, and from foreclosing said chattel mortgage upon the crop grown upon said real estate.

This mortgage was executed on December 23, 1930, to secure promissory notes amounting to $600 on his interest in crops grown in 1931, or to be grown thereafter on a five-acre tract of land therein described and owned by the bankrupt. The mortgage provided that, if the crop of 1931 was not sufficient to meet the obligation secured by the mortgage, "then this mortgage shall be deemed to cover the said crops for the year 1932 and all additional years until the amounts advanced unto the mortgagor by the mortgagee herein have been fully paid and satisfied." The bankrupt filed his voluntary petition in bankruptcy on November 19, 1931, setting forth, among others, the foregoing indebtedness. He was adjudicated a bankrupt on that date, and on December 24, 1931, the court entered an order setting apart the above-mentioned real estate containing five acres as exempt. The bankrupt was discharged on November 23, 1932. The action to foreclose the chattel mortgage was begun in the circuit court of the state of Oregon for Umatilla county in September, 1932, and a criminal information charging the bankrupt with disposing of and selling the apple crop of 1932, which is the means of "harassing and annoying" referred to in the order appealed from, was filed in November, 1932. The bankrupt set forth the foregoing facts, and prayed for a permanent injunction, and for an order declaring the mortgage "void and of no force and effect." The appellant moved to strike the petition on the ground that the court had no jurisdiction of the subject-matter of the petition, and was without jurisdiction "to try or determine the issues raised by the petition or to grant the relief therein prayed for." The matter was apparently submitted upon this motion, and the order appealed from was thereupon entered granting the relief prayed for by the petitioner, including a declaration that the chattel mortgage is "of no force or effect as against the above named bankrupt."

It is claimed by the appellant that the question of whether or not crops are subject to a lien, if grown upon exempt property set apart as such by the bankruptcy court, is one wholly for the state courts, to be decided according to state law. That the state law controls in the determination of the right to a lien upon such crops so grown is well established. That the state court has jurisdiction to pass upon the validity and effect of such a lien after an adjudication has been asserted cannot seriously be doubted. Public Finance Co. v. Rowe, 123 Ohio St. 206, 174 N. E. 738, 74 A. L. R. 900; Union National Bank of Minot v. Lenton, 54 N. D. 262, 209 N. W. 350; Thompson Yards v. Richardson, 51 N. D. 241, 199 N. W. 863; Eckhardt v. Hess, 200 Iowa, 1308, 206 N. W. 291, 292. But the question of jurisdiction of the bankruptcy court is not settled by conceding jurisdiction to the state court, nor by conceding that the question is one to be determined according to state law. The bankruptcy court can and should declare the effect of and enforce the state law, if it has jurisdiction of a case in which the state law is involved.

The fundamental question involved is the effect of the discharge in bankruptcy upon the debt secured by chattel mortgage. If, on the one hand, the debt is not secured by an existing lien, the discharge frees the bankrupt from it; if, on the other hand, the debt is secured by an existing lien, it does not, and the creditor may foreclose his lien upon the property covered by it. The question may be decided by either state or federal court according to state law, but the bankruptcy court has primary and superior jurisdiction to determine the effect of its own decree of discharge, and it may exercise, or refuse to exercise, that jurisdiction according to the exigencies of the case. This we think was decided by the Circuit Court of Appeals for the Fourth Circuit in Seaboard Small Loan Corp. v. Ottinger, 50 F.(2d) 856, 859, 77 A. L. R. 956, where it was said: "In view of this purpose of the act and of the express provision that the bankrupt shall be released from all

provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it." See, also, Pell et al. v. McCabe et al. (C. C. A.) 256 F. 512, 515.

 We conclude that the trial court had jurisdiction to decide whether or not the discharge in bankruptcy relieved the bankrupt of the debt and consequently of the claimed lien on which the actions were brought against him in the state court. The rule applicable in the state of Oregon to a chattel mortgage upon crops to be grown in the future is stated as follows in U. S. Nat. Bank v. Wright, 131 Or. 518, 520, 283 P. 1, as follows:

"It is well settled that a chattel mortgage on crops to be thereafter sown and raised on the land of the mortgagor constitutes no lien on the land and will attach only to such interest as the mortgagor has in the crops when they come into being. Jones on Chattel Mortgages (5th Ed.) § 143a; Bouton v. Haggart, 6 Dak. 32, 50 N. W. 197; McMaster v. Emerson et al., 109 Iowa, 284, 80 N. W. 389; Simmons v. Anderson, 44 Minn. 487, 47 N. W. 52; Collins v. Brown, 19 Idaho, 360, 114 P. 671; Snerly v. Stacey et al., 174 Ark. 978, 298 S. W. 213, 214.

"As stated in the case last cited:

" 'Mortgages on crops to be grown in the future constitute no lien upon the land upon which they are to be produced, and the lien formerly did not attach to the crop until it came in esse. The lien then attaches only to such interest as the mortgagor may have in the crop at that time.' "

See, also, Flanagan Bank v. Graham, 42 Or. 403, 71 P. 137, 790.

Courts have held almost without exception that, where there is no lien upon property belonging to the debtor at the time of his discharge, he is discharged from the obligation and the creditor deprived of his right to enforce the same against property subsequently acquired by the debtor which, upon principles of equity, would be subject to a lien as soon as acquired if there had been no discharge in bankruptcy. This rule has been most frequently applied in cases of assignments or agreements to create liens upon wages to be earned subsequently by the debtor. In states where these agreements had been sustained as agreements to create a lien or an equitable interest in the wages when earned, it has been held that an adjudication in bankruptcy and discharge precluded the creditor from proceeding against wages subsequently earned which would otherwise be subject to the equitable lien or assignment. The principle upon which these decisions are rendered is that there can be no lien upon something which does not exist at the time of the adjudication. Consequently, there is no lien preserved by the Bankruptcy Act to the creditor in case of discharge. One of the leading cases on this subject is In re West, 128 F. 205, 206, decided by Judge Bellinger in the District Court of the United States for the District of Oregon. We quote therefrom as follows:

"The theory of a lien upon the earnings of future labor is not that it attaches to such earnings from the moment of contract of pledge or assignment, but from the moment of their existence. It is needless to say that there can be no lien upon what does not exist. A pledge or assignment of future wages under an existing employment is said to create an equitable interest in such wages. Stott v. Franey, 20 Or. 410, 26 P. 271, 23 Am. St. Rep. 132. This is true of wages earned upon a general employment, as well as those earned upon a definite contract. In this case the railroad company was under no obligation to employ the bankrupt, nor he to work for the company. If future earnings in such a case can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien, or the so-called equitable interest, does not attach until the wages come into existence, and until the lien does attach there is no lien. The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors. Collyer on Bankruptcy, 509."

 To the same effect see In re Lineberry (D. C.) 183 F. 338; In re Fellows (D. C.) 43 F.(2d) 122; In re Potts (D. C.) 54 F.(2d) 144. The same rule was recently laid down by the Circuit Court of Appeals of the Fourth Circuit, speaking through Judge Parker in Seaboard Small Loan Corp. v. Ottinger, 50 F.(2d) 856, 77 A. L. R. 956; Public Finance Co. v. Rowe, 123 Ohio St. 206, 174 N. E. 738,

74 A. L. R. 900. By a parity of reasoning, where the state law creates no lien upon a future crop subject to a chattel mortgage until the crop comes into existence, the discharge of the bankrupt would destroy the remedy of the mortgagee and prevent an enforcement of the mortgage upon the crop when it comes into existence. A somewhat similar situation arose in North Dakota. In Union Nat. Bk. of Minot v. Lenton, 54 N. D. 262, 209 N. W. 350, the Supreme Court of North Dakota held that the discharge in bankruptcy did not prevent the subsequent foreclosure of chattel mortgage upon a crop which was not planted until after the adjudication in bankruptcy. But this decision was expressly based upon the statutory law of North Dakota which gave a lien in præsenti in the next annual crop.

These decisions have no application to the case at bar because based upon a statute peculiar to North Dakota at variance with the statutory law and the decisions of Oregon with reference to the nature and effect of the chattel mortgage upon crops to be grown in the future.

Order affirmed.