## PARTRIDGE v. ST. LOUIS JOINT STOCK LAND BANK et al.
### No. 9993.

District Court, E. D. Missouri, E. D.

Nov. 28, 1933.

Moore & Fitch, S. E. Boudreau, and Max O'Rell Truitt, all of St. Louis, Mo., for plaintiff.

George W. Wilson, of Washington, D. C., and Jacob M. Lashly, of St. Louis, Mo., for defendant.

FARIS, District Judge.

Plaintiff, a bondholder of defendant St. Louis Joint Stock Land Bank, sues in equity for himself and all others similarly situated, for an accounting touching certain assets alleged to constitute a trust fund held for the bondholders of defendant St. Louis Joint Stock Land Bank, and which defendant Cantley, as administrative receiver, or statutory receiver, unlawfully, it is alleged, now holds, and, in effect, to oust Cantley, and also to have this court appoint a receiver in equity.

Defendant St. Louis Joint Stock Land Bank (hereinafter called Land Bank, simply, for brevity) became and was, in June, 1932, declared by the Federal Farm Loan Board to be insolvent. Defendant Cantley was thereupon appointed by the Federal Farm Loan Board, receiver to take possession, and he now has possession, of all books, records, property, and assets of whatsoever sort of said Land Bank, including mortgages and other property deposited with defendant, Campbell, as registrar of defendant Land Bank to secure the bonds held by plaintiff and divers others.

Plaintiff contends that defendant Cantley, as receiver appointed by the Farm Loan Board, has no authority to take possession of the mortgages and other assets deposited, it is alleged, as collateral, by the Land Bank, with Campbell, registrar, because such collateral is not an asset of the bank, but that power to liquidate and wind up the affairs of the Land Bank inheres in a court of equity only, and lawful possession of such pledged assets lies, therefore, only in a receiver appointed by such a court.

Defendants contend contra, and insist, that not only does section 961, title 12, U. S. C. (12 USCA § 961), confer this power on a receiver, such as is Cantley, appointed by the Farm Loan Board, but that the whole policy, tenor, and language of the Federal Farm Loan Act (12 USCA § 641 et seq.) indicate an intention of the Congress so to confer such power.

Obviously, the decision of but a single question will solve this case. That question is, Has Cantley the right of possession of the assets named, and the authority to liquidate them and wind up this insolvent Land Bank?

Section 961, supra, after providing for the appointment by the Farm Loan Board of a receiver for national farm loan associations, proceeds to set out the authority and duties of such receiver, thus: "Such receiver, under the direction of the Federal Farm Loan Board, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, with the approval of the Federal Farm Loan Board, or upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubt-

ful debts, and, on a like approval or order, may sell all the real and personal property of such association, on such terms as the Federal Farm Loan Board or said court shall direct."

It will be observed that, while the above section does not specifically mention a joint-stock land bank, such as is here being dealt with, yet, by a subsequent statute (section 963, of title 12, U. S. C. [12 USCA § 963]), such banks are put in precisely the same category as are national farm loan associations, and the provisions of section 961, supra, are specifically made applicable to joint-stock land banks.

Section 656, title 12, U. S. C. (12 USCA § 656), provides for the appointment of a registrar who, by the provisions of this same section, is a public and not a private officer, and whose salary is paid by the Land Bank. Section 781, title 12, U. S. C. (12 USCA § 781), provides that the mortgages taken by the Land Bank shall be deposited in trust by the Land Bank with the registrar to be used by him as collateral security for farm loan bonds, such as plaintiff and those for whom he sues now hold and own.

Arguing by analogy to the ruling of the Supreme Court of the United States, in the case of Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640, wherein it was held that a receiver of a failed national bank has no more right to the collateral pledged by a bank to secure its debt than the bank itself would have [see, also, Schumacher v. Eastern Bank & Trust Co. (C. C. A.) 52 F.(2d) 925], and heartened, no doubt, by the decision by the Supreme Court of the United States in the case of Wheeler v. Greene, 280 U. S. 49, 50 S. Ct. 21, 74 L. Ed. 160, it is upon the provisions of section 781, supra, that plaintiff bottoms his case. In other words, the bald contention is that the mortgages and other collateral deposited by the Land Bank with the registrar are not assets of the Land Bank, within the terms of section 961, supra; therefore, these mortgages are to be foreclosed for the benefit of bondholders only in a court of equity and by a receiver appointed by such court. And this, too, notwithstanding the statute which gives possession of all books and records to a receiver appointed, as defendant Cantley was, by the Federal Farm Loan Board.

This latter provision, above referred to, seems to me to throw much light on the intention of the Congress, touching the manner in which that legislative body intended insolvent land banks to be liquidated. I think it is clear that the term "all books (and) records" includes those books and records which are in the hands of every officer of the bank. So, the term used embraces books and records in the hands of the registrar, because he is an officer of the Land Bank. If so much be conceded, as I think it must be, then the registrar's possession was not adverse to either the bank or to the statutory receiver, defendant Cantley. In short, the registrar held this collateral as an officer of the Land Bank for all the uses and purposes of the act. Moreover, it must also, I think, be conceded that the books and records, pursuant to the statute above quoted, pass on insolvency into the absolute custody and possession of the statutory receiver, and it is thus rendered well-nigh impossible for a receiver appointed by a court in equity to get such data as would enable him to function in the performance of the powers and duties sought by plaintiff to be conferred on him.

I think no one can read the Federal Farm Loan Act without reaching the conclusion that the Congress intended to pass a self-contained and comprehensive act to govern the organization, powers, duties, and functions of, and to fully provide for, the winding up and liquidation of insolvent farm loan organization of all sorts, without the necessity of a resort to the courts, save in exceptional circumstances. Largely, the Congress took for its model the long-existing laws governing like subjects in the case of national banks. If it fell short of complete analogy, the failure, to my mind, was one of inadvertence. True it is, that in the case of Wheeler v. Greene, supra, 280 U. S. loc. cit. 51, 50 S. Ct. 21, 74 L. Ed. 160, the Supreme Court finds what to it is a convincing reason why power was given to the Comptroller of the Currency, to collect through a receiver the so-called double liability of stockholders in failed national banks and withheld such power from the Farm Loan Board in the other. Obviously, if such power is lawful and constitutionally valid in the one case, it ought to be valid and constitutional in the other. I assume, without deciding, that, if too much be assessed against and collected from the stockholders, in either the liquidation of a national bank or a farm loan organization, any such surplus exacted could be recaptured by the stockholders after all debts of the bank had been paid in full. It is clear, because the Wheeler Case, supra, so rules, that the power of the receiver, such as is defendant Cantley, to collect from stockholders of an insolvent land bank, was not by the act creating him specifically conferred. This, I think, was sufficient, whether it was

withheld intentionally, or by mere inadvertence, by a slip of the scissors, so to speak, or not. By virtue of the ruling in the Wheeler Case, supra (with which, of course, I have no quarrel), we are already confronted with a situation where two receivers are necessary in liquidating a land bank, one to collect the double liability of stockholders, and one to take charge of all books, records, and assets of the insolvent land bank, and to collect all debts due to such banks. Surely the Congress never intended, even in this golden age of receivers, that there should be three receivers to liquidate one insolvent land bank. But to this situation the contentions of plaintiff would inevitably lead us.

As said, in effect, by Judge Wilkerson, the thing sought by plaintiff here does not so much involve reading into the act things doubtfully implied, but it does involve reading out of the statute and the casting away of much language clearly and specifically used therein.

I wholly agree with what is said in Merrill v. National Bank, supra, as in duty bound, but to me there seems a vast difference in principle between the title and rights of a creditor of a bank, who is secured for his debt by collateral security pledged with him for that purpose, and an officer of the Land Bank who holds collateral, as here, to secure the bonds of plaintiff and others, similarly situated. In the one case the collateral is held by a stranger for his sole benefit, and in the other by a statutory officer of the Land Bank, who holds it as a convenient detail in the administration of the affairs of the Land Bank. In trust, of course, the statute says, but not in complete title.

A similar final conclusion was reached in this circuit, in the case of Krauthoff v. Kansas City Joint-Stock Land Bank (C. C. A.) 23 F.(2d) 71, as also in the later case of Krauthoff v. Kansas City Joint-Stock Land Bank (C. C. A.) 31 F.(2d) 75. True it is, that some of the broad language used in both of the Krauthoff Cases, supra, has now been modified by the ruling in Wheeler v. Greene, supra, but not at all on the point here up for judgment.

As forecast by what has been said already, the Wheeler Case rode off in the Supreme Court on two questions. One of these was whether the double liability was an asset of the Land Bank (loc. cit. page 52 of 280 U. S., 50 S. Ct. 21), and the other was what authority, if any, was given to the statutory receiver by the Land Bank Act, to collect assessments against the stockholders. It was held, first, that the act gave no specific power to the statutory receiver to collect these assessments, and, second, that such liability is not among the assets of the Land Bank. Obviously, the court did not intend to say that, if statutory power had been specifically given to the statutory receiver to enforce the double liability of stockholders of the bank, the mere use of the term "assets of the bank" would of itself have destroyed this power. This, for the simple reason that the National Bank Act uses similar language in setting out the powers of the receiver to take charge of the books, records, and assets of the bank, and it is well settled that a receiver of an insolvent national bank may sue for and collect assessments made against stockholders [Jones v. Jenkins (C. C. A.) 22 F.(2d) 642], and this, too, notwithstanding the provisions of section 65, title 12, U. S. C. (12 USCA § 65).

It follows, in my opinion, that the finding should be for defendants and against the plaintiff, dismissing his bill of complaint with costs, which accordingly is ordered.