## LAMB *v.* ABENDROTH.

1. BANKS AND BANKING—TRUST COMPANY CERTIFICATES OF DEPOSIT—ESTOPPEL OF STOCKHOLDER.

   Stockholders of trust company who are chargeable with notice that it had issued certificates of deposit upon authority of opinion of attorney general that statutes conferred power upon trust companies to do so *held,* estopped to deny liability therefor as are the trust company and its receiver (3 Comp. Laws 1929, §§ 12016, 12018, 12024).

2. ESTOPPEL.

   Acquiescence or tacit assent means the neglect to promptly and actively condemn the unauthorized act and to seek judicial redress, after knowledge of it, whereby innocent third parties have been led to put themselves in a position from which they cannot be taken without loss.

3. BANKS AND BANKING—TRUST COMPANY CERTIFICATES OF DEPOSIT—ULTRA VIRES—ESTOPPEL OF STOCKHOLDERS.

   In action by receivers of trust company to enforce statutory liability of its stockholders based largely upon 400 certificates of deposit, question of whether or not certificates were *ultra vires* is not decided where stockholders are held estopped to deny liability.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 4, 1934. (Docket No. 19, Calendar No. 37,668.) Decided June 21, 1934. Rehearing denied September 18, 1934.

Bill by Scott E. Lamb and Charles A. Smith, receivers of Metropolitan Trust Company, against Florence Abendroth and others to enforce a stock assessment. Decree for plaintiffs. Defendants Allerton and others appeal. Affirmed.

*Emmons, Oren & Sleeper (David A. Howell,* of counsel), for plaintiffs.

*Hugh G. Allerton*, *in pro. per.*

*Butzel, Levin & Winston,* for defendant Roy A. Plumb.

*Robert M. Brownson* (*Kenneth Murray* and *Paul Marco*, of counsel), for defendant Brownson.

*Berry & Stevens,* for defendant Campbell.

*Harry M. Stone* and *Ernest C. Stieler,* for defendants Holmes, Mead, Watson, Van de Walker, Gardner, Dant, Lyons and Ellis.

NELSON SHARPE, C. J.   The bill of complaint herein was filed by the receivers of the Metropolitan Trust Company to enforce the liability fixed by statute (3 Comp. Laws 1929, § 12024) of its stockholders under an order of the court therefor.   The claims filed with and allowed by the receivers amount to the sum of $1,262,198.24, of which $1,000,507.80 are in the nature of certificates of deposit.   It appears that the appraised value of the assets of the company amounts to $968,246.39.   It is the claim of the appellants that the trust company had no power or authority under the statute or its charter to issue these certificates, and that no liability on the part of the stockholders attached by reason thereof, and that, as the assets as appraised are of greater value than the indebtedness with these certificates eliminated, no necessity existed for the enforcement of such liability.

The Metropolitan Trust Company of Highland Park was incorporated on April 22, 1925, under Act No. 108, Pub. Acts 1889, and the amendments thereto (see 3 Comp. Laws 1929, § 11997 *et seq.*).   Its articles were later amended by changing its name to Metropolitan Trust Company and its place of busi-

ness from Highland Park to the city of Detroit. Its capital stock was increased to $500,000, divided into 25,000 shares of $20 each. The applicable sections of the statute read as follows:

SEC. 12016. "It shall be lawful for any such corporation * * * to execute and issue in the transaction of its business all necessary receipts, certificates, papers and contracts, which shall be signed by such person or persons as may be designated by the by-laws of such corporation."

SEC. 12018. "Any corporation organized or existing under this act shall have power in and by its corporate name to take, receive and hold, and repay, reconvey and dispose of any effects and property, both real and personal, which may be granted, committed, transferred or conveyed to it, with its consent, upon any terms, or upon any trust or trusts whatsoever at any time or times, by any person or persons. * * * Such corporation shall have power to loan money upon real estate and collateral security, and execute and issue its notes and debentures, payable at a future date, and to pledge its mortgages on real estate and other securities as security therefor. But nothing herein contained shall be construed as giving the right to issue bills to circulate as money or buy or sell bank exchange or do a general banking business."

SEC. 12024. "The stockholders of every trust company shall be individually liable, equally and ratably, and not one for another, for the benefit of the creditors of said trust company to the amount of their stock at the par value thereof, in addition to the said stock."

In 1912, the then commissioner of banking wrote the attorney general of the State with regard to the power of trust companies to issue certificates of deposit in return for moneys received by them. In

answer thereto, the attorney general replied in a lengthy opinion in which he discussed the question and reviewed the authorities bearing thereon, and concluded that such power was conferred by the statute.

In the opinion filed by the trial court he found:

"The trust companies that were in existence at that time, and all trust companies that have been formed since, have followed that opinion. This is the first time that it has been questioned. This particular trust company was not in existence at the time that opinion was given, so when it was formed and it started to sell its stock and put it upon the market, the trust companies were doing business in accordance with this opinion, and so it must be held that when these defendants purchased this stock in this particular company they did it with the knowledge that that was the way trust companies were doing business in Michigan and that they were doing business in Michigan that way under high authority."

He expressed doubt as to whether, under the statute and its articles of incorporation, the trust company was authorized and empowered to issue such certificates, but found that the stockholders were estopped to deny liability, and entered a decree against them severally for the amount of their stock, from which a number of them have prosecuted this appeal.

Counsel for the appellants contend that, while the trust company and its receivers may be estopped to deny liability under the certificates issued, the stockholders are not bound thereby. They cite authority to support this contention. 14 C. J. p. 1033; *Ward* v. *Joslin,* 186 U. S. 142 (22 Sup. Ct. 807); *Assets Realization Co.* v. *Howard,* 70 Misc. Rep. 651 (127 N. Y. Supp. 798).

Had the issue been involved in a single trans-
action, a different question would be presented.
There were 400 of such certificates allowed as
claims, and they were issued by the company in
reliance upon the opinion of the attorney general
that the law permitted it to do so, and the stock-
holders apparently acquiesced in its action for the
same reason.    The creditors who deposited their
money and accepted these certificates were doubt-
less also so impressed.    Had they hesitated about
the investment or questioned the power of the com-
pany to issue them, all doubts would seemingly have
been removed by a reference to the opinion.

The question is, who must stand the loss.    We
agree with the trial court that it should be the stock-
holders.    They either had notice or were chargeable
therewith that the company was issuing these certifi-
cates under a claim of right to do so.    They accepted
the benefits derived therefrom in the way of divi-
dends without protest, and may not now resist the
enforcement of the assessment on the ground that
the company had no lawful authority to issue them.

There is authority to support this holding.    In
*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 187,
the court said:

"And where third parties have dealt with the
company, relying in good faith upon the existence
of corporate authority to do an act, there it is not
needed that there be an express assent thereto on
the part of stockholders to work an equitable estop-
pel upon them.    Their conduct may have been such,
though negative in character, as to be taken for an
acquiescence in the act; and when harm would come
to such third parties if the act were held invalid,
the stockholders are estopped from questioning it.
We suppose acquiescence or tacit assent to mean
the neglect to promptly and actively condemn the

unauthorized act, and to seek judicial redress, after knowledge of the committal of it, whereby innocent third parties have been led to put themselves in a position from which they cannot be taken without loss.''

In *Kipp* v. *Miller*, 47 Col. 598, 607 (108 Pac. 164, 135 Am. St. Rep. 236), it was said:

''The suit is in equity for a judicial ascertainment of the stockholders' liability, and for an adjudication according to the very right. Shall the creditors, who, acting in good faith, have dealt with these branch banks as part of the State bank, and deposited their moneys upon the credit of the associated banks, with a capital of $80,000, be turned away empty handed, on a plea by the stockholders, who have acquiesced in this course of dealing for upwards of eight years, accepting profits accruing therefrom, that the corporation had no authority in law to carry on and conduct its business after that particular manner, or in that particular place? Upon every consideration of fair dealing the answer to this proposition must be in the negative. The bank was a private corporation; no public question is involved. The matter is one calling merely for a just and equitable adjustment of money claims between individuals. The very right can only be done by holding the stockholders to their statutory liability, thus affording the innocent creditor such relief as that course may bring. By this method justice is done to all and wrong to none.''

''Nor can the shareholders of a corporation avoid responsibility for the unauthorized acts of their agents, by abstaining from inquiry into the affairs of the company, or by absenting themselves from the company's meetings, and at the same time reap the benefit of their acts in case of success.

''If a shareholder fails to take the trouble of inquiring into the affairs of the corporation of which he is a member, or to attend its meetings, it seems

no more than just that his supineness should be construed as an acquiescence in the proceedings of the majority." 2 Morawetz on Private Corporations (2d Ed.), § 630.

"And generally, when an act done by the directors is in excess of their authority, yet has been done with the *bona fide* intent of benefiting the corporation, and a shareholder, knowing thereof, does not dissent within a reasonable time, his assent to the act will be presumed, and he will be estopped from gainsaying it." Thompson on Corporations (3d Ed.), § 2094.

The conclusion reached renders it unnecessary to decide whether a trust company in this State is authorized and empowered by the statute to issue certificates of deposit. The attention of the legislature is respectfully called to the uncertainty existing relative thereto, and it may very properly amend the sections quoted so as to expressly grant such power or deny its existence, as to it shall seem meet.

The decree is affirmed. As a public question is involved, no costs will be allowed.

POTTER, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. BUTZEL, J., did not sit.