**HOLMBERG et al. v. ANCHELL et al.**

District Court, S. D. New York.

Aug. 20, 1938.

596

Franklin S. Wood, of New York City (George Z. Medalie, George Sylvester, and Louis Haimoff, all of New York City, Loring Staples, of Minneapolis, Minn., and Clarence Fried, of New York City, of counsel), for plaintiff.

Morgan & Lockwood, of New York City (Thomas A. Sully, of New York City, of counsel), for defendant Mabon & Co.

Abberley, Bryde, MacFall & Amon, of New York City (R. C. MacFall, of New York City, of counsel), for defendants Babcock Rushton & Co.

Mack, Macauley, Spiegelberg & Gallagher, of New York City (George A. Spiegelberg, of New York City, of counsel), for defendants J. & J. H. Gertler, Paul Fox and George A. Spiegelberg.

Lawler & Chambers, of New York City (James S. Lawler, of New York City, of counsel), for defendant Dr. E. Banta.

Schapiro, Wisan & Schapiro, of New York City (M. Horn, of New York City, of counsel), for defendant F. Zimmerman.

Shearman & Sterling, of New York City (H. Harfield, of New York City, of counsel), for defendant Hurley & Co.

David Klein, of New York City, for defendant Albert Wollheim.

White & Case, of New York City (A. H. deYampert, of New York City, of counsel), for defendants N. Y. Trust Co. and Merrick & Co.

Proskauer, Rose & Paskus, of New York City (Charles Looker, of New York City, of counsel), for defendant Silas M. Moorman.

Kaplan & Kaplan, of New York City (Louis Kaplan, of New York City, of counsel), for defendant William Farson.

Adrian J. O'Kane, of New York City, for defendants Leo F. and Mary C. Simpson.

Otto M. Buerger, of New York City, for defendant Margaret M. Blinn.

Adolph Feldblum, of New York City, for defendant Anchell.

Shattuck, Bangs & Davis, of New York City (W. Davis and C. Waldecker, both of New York City, of counsel), for defendants H. S. Davis and Blake Bros.

Jacob Fogelson, of New York City, for defendants M. J. and Sirma Devlet, E. J. Harling and F. Carr.

Knowles & Hack, of New York City (C. F. Kingsley, of New York City, of counsel), for defendant H. M. Day.

David Joyce, of Brooklyn, N. Y., for defendant Erna E. McCready.

Talman W. Van Arsdale, of Buffalo, N. Y. (R. E. Dee, of New York City, of counsel), for defendant John B. A. Noble.

Charles Grossman, of New York City (Paul Moskowitz, of New York City, of counsel), for defendant R. Schultz.

WOOLSEY, District Judge.

My decision is:

■ 1. That this suit be dismissed as against defendant Spiegelberg without costs for the reason that he was made a party hereto solely for the purpose of discovery, and has complied with the prayer of the complaint in that respect, leaving no residuum of relief due from him to the plaintiffs.

2. That the suit be dismissed as against Jeanne Gertler and Sirma Devlet without costs.

3. That the cross suit for indemnity by Battelle, Ludwig & Co. against John H. Gertler and Michael J. Devlet be dismissed without costs.

4. That the complaint be dismissed without costs as to Mary Catherine Simpson and Leo F. Simpson, on the ground of infancy, and, as to 21 shares of the 31 shares on record in Edward J. Harling's name, on the ground that the said 21 shares were put in his name whilst he was an infant and duly disaffirmed by him.

5. That the complainants have, with costs, a decree, as hereinafter indicated in the following memorandum opinion, as against all the other defendants herein who have been served with process and still remain parties because they have not settled with the plaintiffs, or already had the complaint dismissed as against them for other reasons than settlement.

■ I. My subject matter jurisdiction in this cause is based on the fact that the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and arises under the laws of the United States, Title 28, United States Code, Section 41 (1) (a), 28 U.S.C.A. § 41 (1) (a).

Subject matter jurisdiction herein on this basis has been sustained, and a remedy in equity for the relief herein sought has been approved by the Circuit Court of Appeals of this Circuit in Brusselback et al. v. Cago Corporation et al., 85 F.2d 20.

II. The following defendants have been served with process and have appeared and answered: Dr. Edward W. Banta; Frederick F. Carr; Edward J. Harling; Mabon & Co.; Merrick & Co.; Silas M. Moorman; Albert P. Wollheim; Frederick A. Morrell, Jr.; Raymond Schulze; John V. A. Noble; Margaret May Blinn; Leo F. Simpson, Jr.; Mary Catherine Simpson; Harold E. Jewell; Erna E. McCready; Ota Corporation; Jeanne Gertler; John H. Gertler; Paul Fox; Sirma Devlet; Michael J. Devlet.

III. The following defendants have been served with process, and have defaulted, and in respect of them the trial herein constituted an inquest: Doris Schumacker; Jacob Zeller; Mabel L. Morgan; Frank F. Swift; Harold W. Holden; Frank R. Vose; Julius Weber.

IV. The following defendants have settled with the approval of the Court and as to them the cause was severed and dismissed or discontinued: Dominick & Dominick; J. Barkley Eakins; Mrs. Elise VanVranken; Lillian Ahlers; Frank R. Vose; Maplewood Assets Corporation; Kenneth K. McKenzie; Gilbert, Elliott & Co.; Blake Bros. & Co.; Albert A. Crea; Henry R. Tibbitts; Annie Anchell; Morton Anchell; Battelle, Ludwig & Co.; Hurley & Co.; Redmond & Company; Margaret May Blinn; Hyman Katz; William Farson & Co.

V. The following defendants were served but as to them the suit was dismissed for various reasons other than set-

tlement: Harold E. Jewell; Jeanne Gertler; Sirma Devlet.

VI. The following defendants were served, but the suit was discontinued as against them, but only insofar as they are alleged to be beneficial owners of shares of the Southern Minnesota Joint Stock Land Bank of Minneapolis which were transferred to the defendant Minnesota Corporation—a Delaware corporation—for their benefit and in respect of which suit is now proceeding against them in the District of Delaware: Minnesota Corporation; Jeanne Gertler; Gertler, Devlet & Co.; Sirma Devlet; Edward J. Harling; Michael J. Devlet; Frank Zimmerman; Merrick & Co.; J. H. Holmes & Co.; Babcock, Rushton & Co.; Mackey & Co.; Blake Bros. & Co.; Edward D. Sadler.

VII. The following defendants named herein were not found and so have not been served with process, and, therefore, they are not parties to this cause, and the suit has been discontinued as to them without prejudice to a renewal of suit against them if and when they are found: Charles Armbrecht; Maude D. Dumont; Ida Fullerman; John W. Jones; Russell L. Katz; Estate of Charles M. Manley; Abraham Mayer; Boris Ruben; Sophia Breschel; Samuel L. Smith; Helen M. Lavelle; Helen Levy; Laurence Loring; John A. Pearlman; Jacob Rosenstock; Elizabeth M. W. Fay; Della Gordon; Estate of Thomas J. Shanley; John S. Watkins; Laglo Corporation; Mary J. Stoll; Joseph Goetchius; S. Mayo Boyd; Peter F. Patte; Edw. H. Squibb, Trustee; Jacob Schwartzberg; Howard Sanborn; Tripp & Andrews; Thomas Riker; Otis W. Barker; Schmidt & Co.; Henry S. Bartow; William M. Blain; Thos. G. Flaherty; S. L. Adler; Percy M. Layman; C. Vincent Armstrong; Mary B. Chamberlain; Maurice S. Cohen.

VIII. Inasmuch as under the decision of the United States Supreme Court on April 25, 1938, in Interstate Circuit, Inc., v. United States, 304 U.S. 55, 57, 58 S.Ct. 768, 769, 82 L.Ed. 1146; it is indicated that formal findings of fact and conclusions of law separately stated under Equity Rule 70½, 28 U.S.C.A. following section 723, must supersede any opinion in an equity case, I shall content myself with indicating generally my findings of fact and reasons therefor and my conclusions of law thereon, without attempting to write a considered opinion such as the interesting questions of law herein raised by the defendants tempt me to do.

IX. *The Question of Insolvency and the Quantum of Assessment.*

I hold that the receivership, which was set up by the Federal Farm Loan Board on May 2, 1932, is a matter with which I cannot properly deal because it is an act of an executive administrative board not shown to have been wrong. Therefore, insolvency on May 2, 1932 must be assumed.

I was abundantly satisfied on the subject of the quantum of the present deficit by the books and by the evidence of the experts on farm values called by the plaintiffs—Smith, Ludlow, Bennetson, Johnson, Riesinger, Hynes, Orth, Wasnuk and Simmons. I thought they knew their job most extraordinarily well. They all had seen all the farms as to which they were testifying and they were most satisfactory to me as experts. So it is quite appropriate for me to adopt what they testified to as correct, and to find, as I do, that the present deficit of the Southern Minnesota Joint Stock Land Bank of Minneapolis—the present name of the bank herein involved —is in excess of $11,000,000.

We know that the deficit by the receiver's books, based on carrying value, was $8,328,102.43 and we also know that the only substantial asset items, as to which there could be room for argument, are the real estate owned and the sheriff's certificates which, in this cause, are so few as to be almost negligible. As to these categories of items, the experts above mentioned testified, as I have stated, most clearly, and I adopt the values they fixed without going into the detail of all the multitudinous exhibits which are part of this branch of the case.

I think that we can look at the matter thus:

1. The real estate owned by the receiver was carried at the unpaid balance of the original mortgage loan except that, in cases where title had been acquired by the bank one year prior to the receivership, the property was carried at the amount of the unpaid balance of the loan or the reappraised value of the property, whichever was less.

2. The real estate represented by sheriff's certificates was carried at the unpaid balance of the original loan. These certificates amounted to only $12,337.39.

It works out thus:

Total real estate including sheriff's certificates amounts at carrying value to $8,578,587.08.

Total real estate owned, including sheriff's certificates, at the experts' valuation amounts to $5,350,861.09.

By way of parenthesis, I should say that this included certain real estate not expertised but agreed on by stipulation, for the purposes of this cause, at the carrying value; to-wit, 22 farms in Southeastern Minnesota, and also a farm in North Dakota, and a house in El Centro, California,—taken in exchange for farms sold by the receiver,—carried at $240,193.09.

The total deficit of the bank, therefore, as shown by the evidence in this case, is greater than the carrying value on April 30, 1938 by $3,227,725.99.

Thus, assuming my computation to be correct, if there is added to the deficit by the receiver's books based on the carrying value of $8,328,102.43 the sum just mentioned being the difference between carrying value and present actual value—of $3,227,725.99, a deficit of $11,455,828.42 results as of the present time. That is the deficit which I find herein.

The total outstanding stock of the bank at the date of the receivership was 30,000 shares, and that had a total par value of $3,000,000. Since the deficit of the bank is upwards of $11,000,000, the liability of the stockholders therefor is the total par value of their stock, and a 100% assessment is necessary.

## X. Status of Ota Corporation

By stipulation dated April 22, 1938, and herein incorporated by reference, the interested parties have agreed that I may make a finding in this case as to the beneficial ownership of Southern Minnesota Joint Stock Land Bank stock in accordance with my finding in the cause of Brusselback et al. v. Cago Corporation et al., supra, as to the beneficial ownership therein of Chicago Joint Stock Land Bank stock.

In pursuance of said stipulation, therefore, and for the reasons stated in my opinion in the Brusselback Case, I find as a fact that the Ota Corporation was a mere shell—the creature of John H. Gertler and Michael J. Devlet—and did not constitute an insulating device for them as beneficial owners of the 4,585 shares of the stock of the said Southern Minnesota Joint Stock Land Bank registered in the name of the Ota Corporation, or for such other stock of said Joint Stock Land Bank, if any, found in its portfolio endorsed in blank.

I find that Ota Corporation was a joint venture of John H. Gertler and Michael J. Devlet by which they hoped, awaiting eventualities, to maintain, without risk, their position in said bank stock, although they knew of the Bank's precarious condition, and consequently that John H. Gertler and Michael J. Devlet were and are the beneficial owners of said stock and are jointly and severally liable for the assessment on stockholders herein found necessary.

The decree as to this stock will provide for a primary recovery against John H. Gertler and Michael J. Devlet jointly and severally, as the actual joint and several beneficial owners thereof, and for a secondary recovery against Ota Corporation as registered owner of such shares of bank stock as are registered in its name—in all, I understand, 4,585 shares.

In this finding as to the Ota Corporation I have not attempted to do more than to summarize my understanding of the stipulation of July 22, 1938 and when formal findings of fact are submitted by counsel for the plaintiff, they may propose findings dealing in such detail as they may be advised with the situation in this cause which, though it may resemble that in the Brusselback Case so far as the Cago Corporation is concerned, is probably not identic with it.

## XI. Conclusions of Law.

A. I rule against the defendants on the question of segregation of the security underlying the bonds.

It seems to me that there is no provision in the law, that has been called to my attention, explicit enough to earmark the bonds deposited with the Farm Loan Registrar as deposited to secure particular bonds that were issued after the deposit of such securities. Cf. Title 12, United States Code, Sections 855, 856, 895, 897, 12 U.S.C.A. §§ 855, 856, 895, 897.

It is agreed, that as a matter of administrative interpretation of the Act by the Farm Loan Board, there never was such a segregation. It seems to me, therefore, that the decision in McLucas v.

Langworthy, D.C., 7 F.Supp. 457, which so holds, is right.

Therefore, I hold that the successive groups of mortgages that were deposited with the Registrar must be regarded as fungibles which were all behind all the bonds which the Chicago Joint Stock Land Bank had issued, and therefore they must all be considered as security for all those bonds.

■ B. On the question of fixing the par value of the stock of the bank at $100 which the defendants claim should be fixed at $5, under the statute, I do not agree with the defendants.

I agree with Judge Patterson's decision in Todd v. Russell, D.C., 1 F.Supp. 788, 789, 790. I might add that as he is one of my colleagues in this court, proper judicial comity would require me to follow his ruling, even if I did not agree with it.

In addition I should like to remark that I cannot see how it makes a whit of difference to a defendant stockholder in a case of this kind whether the amount of the par value is fixed at $100 or at $5. It does not affect the quantum of his liability as a stockholder, for if he owned, we will say, X dollars worth of stock, the amount of his liability is the same whether the said X dollars worth of stock be divided by 100 or by 5.

■ C. The defendants have raised the point that such of the plaintiffs in this cause, as were also plaintiffs in the case of Holmberg et al. v. Southern Minnesota Joint Stock Land Bank of Minneapolis et al., D.C., 10 F.Supp. 795, have lost their locus standi herein, because on their motion in the Minnesota case the receiver appointed by the Farm Loan Board was also appointed receiver in that case and purportedly vested with title to the plaintiffs' causes of action and authorized to sue outside the district of his appointment, and the order to that effect stands unreversed.

I do not agree.

In the first place, I think that the receiver appointed by the Minnesota court would, no matter what the terms of the order, not have had any power to bring suit outside of the territorial jurisdiction of the court which appointed him.

Then, on the precise point of an assignment which counsel for the defendant argues, created by reason of the prayer of the plaintiff plus the order of the court, I hold that the only way in which the assignment could have been made complete by court action in Minnesota would have been if the court in Minnesota had ordered the plaintiffs to execute assignments to its receiver and they had done so; in that event the Minnesota receiver would have become an actual assignee, and not a quasi-assignee as the defendants' counsel calls him. Therefore, I overrule this defense.

D. *The Defence of Statute of Limitations and Laches.*

1. On May 2, 1932, the Federal Farm Loan Board declared the bank to be in default and insolvent, and appointed a receiver therefor.

On July 28, 1932, the complainants herein, suing individually and on behalf of all other creditors, brought a suit in equity in the United States District Court, District of Minnesota, Fourth Division, against all stockholders of record of the bank, including such defendants in this cause as were stockholders of record asking, as here, recovery of a 100% assessment.

On April 20, 1935, a decree was entered in this Minnesota suit holding that the Bank was insolvent on May 2nd, 1932, and that its liabilities so far exceeded its assets that an assessment against all its stockholders in the amount of 100% of the par value of the stock held by each of them was necessary.

Decree was rendered against all the stockholders who had been served with process or who had voluntarily appeared in said suit.

An attempt was made by order of the District Court in Minnesota dated July 28, 1932, to serve by publication all stockholders of record who could not be reached within that jurisdiction or who had not appeared voluntarily, and, in pursuance of said order, they were notified of the plaintiff's claim.

■ The present suit which was brought against all such stockholders residing in the State of New York and against others who were claimed to be beneficial owners of the stock or against whom discovery was sought, was commenced against the defendants herein on the date when the subpoenas were issued and given to the marshal for service—for example, as against the Ota Corporation, John H. Gertler, and Michael J. Devlet on April 17,

1937—cf. Securities and Exchange Commission v. Torr et al., D. C., 22 F.Supp. 602, 609,—although personal service was not made on said defendants until June 7, 1937.

2. It is common ground that if any statute of limitations be applicable—cf. Todd v. Russell, D. C., 1 F.Supp. 788, 789—it is Section 49 of the New York Civil Practice Act, which reads as follows:

"§ 49. *Actions to be commenced within three years.* The following actions must be commenced within three years after the cause of action has accrued: * * *

"4. An action against a * * * stockholder of a moneyed corporation, or banking association, to recover a penalty or forfeiture imposed, or to enforce a liability created by the common law or by statute. The cause of action is not deemed to have accrued until the discovery by the plaintiff of the facts under which the penalty or forfeiture attached or the liability was created."

3. I hold that this cause does not involve what is commonly referred to as concurrent jurisdiction in law and equity, or what I think might more accurately be called optional remedies in law or equity. Cf. Nuveen v. Board of Public Instruction, 5 Cir., 88 F.2d 175, 179.

For here, although the substantive right relied on by the plaintiffs may be deemed to be of a legal contractual nature—cf. Broderick v. Rosner, 294 U.S. 629, 643, 55 S.Ct. 589, 592, 79 L.Ed. 1100, 100 A.L.R. 1133—there could not be a remedy at law except, perhaps, in the hypothetical case suggested in the argument—which is not this case—of a joint stock land bank with only one creditor and only one stockholder. The reason for this lies, it seems to me, in the provisions of the statute under which the double liability of stockholders is sought to be imposed herein.

The statute involved—Title 12 of the United States Code, Section 812, 12 U.S.C. A. § 812—reads as follows (italics mine):

"Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, *equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank* to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

This cause involves many creditors and many stockholders.

Under the statute just quoted the creditors in the event of insolvency can hold each stockholder *"equally and ratably"* to his statutory obligation.

These words *"equally and ratably"* necessarily require a remedy which involves the creation of a fund, made up of recoveries from stockholders, and distributable among the creditors, under some unitary control preferably by the same receiver as was appointed by the Farm Loan Board and adopted also by the court as its receiver.

Furthermore, as this is a class suit intended to add to a fund for the benefit of the creditors as a whole, there could not,—for example—be a recovery by one creditor in his own behalf against a stockholder defendant of his own choosing, for the creditor would only be entitled to his appropriate share of the recovery determined ratably in concourse with other creditors.

A remedy which will cover successfully such a situation is not merely optionally but exclusively of equitable cognizance as the decisions have indicated. Christopher v. Brusselback, 302 U.S. 500, 502, 58 S.Ct. 350, 351, 82 L.Ed. 388; Wheeler v. Greene, 280 U.S. 49, 51, 52, 50 S.Ct. 21, 74 L.Ed. 160; Brusselback v. Cago Corporation, 2 Cir., 85 F.2d 20, 22.

Consequently the three year limitation statute of New York, Section 49 of the Civil Practice Act, does not bar the suit, and we must turn to the principles governing laches in equity in order to determine whether the plaintiffs may maintain it.

Although the authorities just cited are conclusive, I have dealt perhaps more fully than necessary with this aspect of the defence because it seems to me to have been the principal reliance of the defendants in this cause.

4. In considering whether the plaintiffs were guilty of laches it must be determined whether, under the circumstances here shown, the plaintiffs were excused for not bringing a suit against the defendants herein until about April 17, 1937.

The cause of action accrued and the plaintiffs must be deemed to have been aware of their right to sue stockholders at least by July 28, 1932, when they began their suit in Minnesota.

This suit was accordingly commenced almost two years after the expiration of

the three year New York statute of limitations with which I have just dealt. Consequently the ad interim activities of the plaintiffs must be considered.

5. In November, 1935, after the decision in the Minnesota suit—which was reported as Holmberg v. Southern Minnesota Joint Stock Land Bank of Minneapolis et al., D. C., 10 F.Supp. 795—and in which, as above noted, it was held that the bank was insolvent to such an extent that a 100% assessment on the stockholders was necessary, suit was brought in this district against three record stockholders—Frederick F. Carr, Caroline Behrisch, and Ralph Behrisch, praying inter alia for the appointment of an ancillary receiver who should bring suit against other stockholders resident in this District. This suit was apparently brought under the practice mentioned with approval in Partridge v. St. Louis Joint Stock Land Bank, D. C., 6 F.Supp. 395, at page 397. A motion was then made by the plaintiffs in Holmberg v. Carr to strike out the answer of the defendant Carr and to have an ancillary receiver appointed. This motion was granted by order of this court dated April 23, 1936.

Thereafter the defendant Carr appealed to the Circuit Court of Appeals, and in December, 1936, the decree of the District Court was reversed and the complaint was ordered dismissed with leave to amend. Holmberg et al. v. Carr et al., 2 Cir., 86 F. 2d 727.

An amended complaint was accordingly prepared and filed. This amended complaint changed the whole theory of the cause of action so that it followed as closely as possible not only the substance but the form and wording of the complaint in the Brusselback Case which had been before the Circuit Court of Appeals and in which the practice to be followed in suits against stockholders of joint stock land banks had been prescribed at least for this Circuit. Cf. Brusselback et al. v. Cago Corporation et.al., 2 Cir., 85 F.2d 20.

By order of Judge Clancy, dated June 4, 1937, the references in the said amended bill of complaint to the Minnesota decree were stricken out, and reference is made herein to the Minnesota case solely on the issue of laches and is based on court papers marked as exhibits on the trial.

6. To overcome the presumption—cf. Benedict v. City of New York, 250 U.S. 321, 327, 39 S.Ct. 476, 63 L.Ed. 1005; Freeman v. Hopkins, 9 Cir., 32 F.2d 756, 760—that a claim is stale in a federal equity court due to its having been brought after the expiration of the statute of limitations which would be applicable to a similar kind of suit in the state court or to a similar kind of action at law on the law side of the federal court, it is necessary for the plaintiff to allege and to prove that he had not acquiesced in letting the defendants go free but has used due diligence, under the circumstances, in pressing his claim as against the defendants whom he seeks to hold and that the said defendants were not prejudiced by any delay in so doing. Southern Pacific Company v. Bogert, 250 U.S. 483, 488, 39 S.Ct. 533, 63 L.Ed. 1099; Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 36 L. Ed. 738.

7. It is clear that there has not been any prejudice due to the delay herein. Indeed the defendants have not made any persuasive suggestion as to prejudice caused thereby. The amount of the assessment has not been changed. It was for 100% in the Minnesota case as it is here.

I think it may fairly be said that the plaintiffs exercised due diligence in pursuing the defendants and that the defendants were aware that they were being pursued.

First the attempted service by publication under the order of July 28, 1932, in the Minnesota case was a notice to the defendants who were stockholders of record of the claim which the plaintiffs were asserting.

Then the suit of Holmberg v. Carr, supra,—though it proved to involve a wrong procedure—had as its objective the appointment of a receiver and suit by him against all stockholders of record resident in New York.

But the courts did not regard the practice to be followed in causes of this kind as settled by the case of Wheeler v. Greene, 1929, 280 U.S. 49, 50, 51, 50 S.Ct. 21, 74 L. Ed. 160. Cf. for example the decisions in Partridge v. St. Louis Joint Stock Land Bank et al., D.C., 6 F.Supp. 395; Lincoln National Bank v. De Courtney, D.C.S.D. N.Y., 1931, 14 F.Supp. 997; Brusselback et al. v. Cago Corporation et al., D.C.S.D. N.Y., 1936, 14 F.Supp. 993, 995; Brusselback v. Arnovitz, 6 Cir., 1936, 87 F.2d 761, 763.

As a matter of fact the proper procedure to be followed with regard to claims by creditors of joint stock land banks to

enforce the double liability of stockholders remained in a state of great,—and, in view of the decisions in Wheeler v. Greene, supra, Holmberg v. Carr, supra, and Brusselback v. Cago Corporation, supra,—probably unjustifiable confusion until January 3, 1938, when the decision of the Supreme Court in Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388, reversed Brusselback v. Arnovitz, 6 Cir., 87 F.2d 761, and finally dispelled the fog of procedural uncertainty which had long enveloped causes of this kind and which was implicitly recognized by Mr. Justice Stone in the Christopher Case when he said at page 501, 58 S.Ct. at page 351: "We granted certiorari, * * * to resolve a conflict between the decision of the court below and that of the Circuit Court of Appeals for the Second Circuit in Holmberg v. Carr, 86 F.2d 727. Compare Brusselback v. Cago Corporation, 2 Cir., 85 F.2d 20."

The plaintiffs here are, I think, quite justified, therefore, in saying, after referring to the various cases in which attempts had been made after 1929 to enforce the liability of stockholders in a joint stock land bank, that the procedure was not as clear either to the instance courts or to the Circuit Courts of Appeals as it now seems in the light of the event to the defendants.

Indeed, late in 1937 when the case of Brusselback v. Cago Corporation, supra, was assigned to me, counsel for the parties on both sides therein expressed the belief that the Christopher Case if decided before the Brusselback trial had commenced might narrow the scope of the issues to be tried therein by eliminating the necessity of proving insolvency anew.

8. In Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 39 S.Ct. 533, 63 L. Ed. 1099, Mr. Justice Brandies in dealing with laches in a class suit said at page 488, 39 S.Ct. at page 536 (italics mine):

"First. The Southern Pacific contends that plaintiffs are barred by laches. The reorganization agreement is dated December 20, 1887; the decree of foreclosure and sale was entered May 4, 1888; the sale was held September 8, 1888; and the stock in the new company was delivered to the Southern Pacific on February 10, 1891. This suit was not begun until July 26, 1913; and not until that time was there a proper attempt to assert the specific equity here enforced, namely, that the Southern Pacific received the stock in the new Houston Company as trustee for the stockholders of the old. More than 22 years had thus elapsed since the wrong complained of was committed. *But the essence of laches is not merely lapse of time. It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy.* Here plaintiffs, or others representing them, protested as soon as the terms of the reorganization agreement was announced and ever since they have with rare pertinacity and undaunted by failure persisted in the diligent pursuit of a remedy as the schedule of the earlier litigation referred to in the margin demonstrates. Where the cause of action is of such a nature that a suit to enforce it would be brought on behalf, not only of the plaintiff, but of all persons similarly situated, it is not essential that each such person should intervene in the suit brought in order that he be deemed thereafter free from the laches which bars those who sleep on their rights. Cox v. Stokes, 156 N.Y. 491, 511, 51 N.E. 316. Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence, and, as the lower courts have here found, the defendant was not prejudiced by the delay."

I have already held that there had not been any prejudice to the defendants shown herein.

I now hold also that the plaintiffs did not acquiesce in any way in letting the defendants go free of their double liability but on the contrary showed diligence,—though at times misdirected—in seeking a remedy against the defendants.

The defence of laches must, therefore, fail.

■ If there be any basis for argument to support a claim for laches by the record stockholders there is none by the concealed beneficial owners of stock such as John H. Gertler and Michael J. Devlet. For I hold that, as to them, the plaintiff's right of action did not accrue at least until the complaint was filed in the case of Brusselback et al. v. Cago Corporation et al., supra, on August 8, 1935, when investigations of the Ota Corporation, stimulated by that complaint, led the plaintiffs herein to make the same allegations in regard to Ota Corporation as the plaintiffs in the Brusselback Case had made as to Cago

Corporation. Laches may not be invoked by parties in hiding until they are found.

E. *The Question of Ultra Vires.*

First: 1. In the desire to tap for the benefit of farmers all the sources of funds, public and private, two kinds of banks were made possible by the Federal Farm Loan Act of July 17, 1916, Title 12, U.S. Code, Section 641 et seq., 12 U.S.C.A. § 641 et seq.—namely, Federal Land Banks and Joint Stock Land Banks.

Federal Land Banks were supposed to become cooperative banks by a kind of statutory evolution due to the requirement that borrowers from such banks should buy stock in them.

Joint Stock Land Banks, however, were created as private institutions for the purpose of making profit.

The Federal Farm Land Banks were limited to making their loans through Farm Loan Associations, the formation of which is described in the statute or through certain prescribed or designated agents. The Joint Stock Land Banks, however, loaned direct to the farmers. Cf. O'Connell v. St. Louis Joint Stock Land Bank, 170 Ark. 778, 281 S.W. 385, 388; and also the Federal Farm Loan Bureau,—Its History, Activities and Organization,—by W. Stull Holt, being Publication No. 54 of the Institute of Government Research, published 1924, through the Johns Hopkins Press.

2. Section 811 of Title 12, United States Code, 12 U.S.C.A. § 811, provides for the creation of joint stock land banks "for carrying on the business of lending on farm mortgage security and issuing farm loan bonds."

Section 791 of the same statute, Title 12, United States Code, 12 U.S.C.A. § 791, provides that "no Federal land bank shall have power * * * to loan on first mortgage except through national farm loan associations * * * or through agents."

Section 823 of Title 12 of the United States Code, 12 U.S.C.A. § 823, provides (italics mine) that "any Federal land bank * * * may, with the approval of the Farm Credit Administration, acquire the assets and assume the liabilities of any joint stock land bank, *and in such transaction any Federal land bank may waive the provisions of this chapter requiring such bank to acquire its loans only through national farm loan associations or through agents,* and those relating to status of bor-

rower, purposes of loan and also the limitation as to the amount of individual loans."

It seems to me that this is an express recognition that joint stock land banks are not limited, as federal land banks are, to making loans only through Farm Loan Associations or only through certain named types of agents.

That portion of Section 823 was not affected by the subsequent amendment of March 4, 1925, 12 U.S.C.A. § 823.

Furthermore, national farm loan associations have not any power to take loans from joint stock land banks. If, therefore, joint stock land banks were in the position of only being able to make loans through national farm loan associations we should have the curious situation of having the business of joint stock land banks limited to borrowers who were not authorized to borrow from them, which would be an obvious absurdity. Cf. also sections 720, 721, 761, 12 U.S.C.A., with regard to the constitution of national farm loan associations.

It is abundantly clear to my mind, therefore, that joint stock land banks had not any connection whatever with national farm loan associations.

The administrative interpretation of the Act has recognized this. Cf. Annual Report of Federal Farm Loan Board, December 31, 1932; and House Document 346, 2nd Session of 72nd Congress at pages 20, 22, 23, wherein the distinction between the two forms of lending agencies are succinctly stated, and Treasury Department's Statement of Conditions of Federal Land Banks and Joint Stock Land Banks as of June 30, 1932, at page 10.

With all due deference, it seems to me quite clear that the dictum of Mr. Justice Holmes in Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160, wherein, comparing joint stock land banks with national banks, and not with federal land banks, he said at page 51, 50 S.Ct. at page 21, that they were (italics mine) "created to make loans on farm mortgages *to members of an association in a territorially limited district,* and are relatively local affairs," does not find any support in the Federal Farm Loan Act. This dictum has been one of the main reliances of counsel for defendants in their defence of ultra vires, but, it seems to me, cannot avail them in the absence of any statutory ground on which to base it.

It is clear, in my opinion, that as joint stock land banks are not limited to loans made through national farm loan associations, or a named type of agent, the only question that remains now is whether the present suit is an attempt to saddle on stockholders a liability for an act *outside* of the purpose of the joint stock land bank, which, as above stated, was *"for carrying on the business of lending on farm mortgage security and issuing farm loan bonds,"* or whether the method followed throughout the whole life of this bank merely involved carelessness or irregularity of some kind in the way in which farm mortgage loans were made.

**3.** Section 812 of Title 12, United States Code, 12 U.S.C.A. § 812, deals with the liability of shareholders and makes each shareholder individually responsible "for all contracts, debts and engagements" of a joint stock land bank up to the par value of the amount of stock which each stockholder owned in addition to the amount which he might have paid in for it.

Section 771, subsection 11, Title 12, United States Code, 12 U.S.C.A. § 771, subd. 11, is made applicable to joint stock land banks by Section 818 of the same Act, 12 U.S.C.A. § 818, and that Section 771, subdivision 11, under the caption *"Loans not invalidated by unauthorized acts by banks or associations"* reads as follows: "No loan or the mortgage securing the same shall be impaired or invalidated by reason of the exercise of any power by any Federal land bank or national farm loan association in excess of the powers herein granted or any limitations thereon."

It is further provided in Section 871 of Title 12, United States Code, 12 U.S.C.A. § 871, under the caption, *"Land banks as bound by acts of officers and Credit Administration in issue of bonds"*, as follows: "Each land bank shall be bound in all respects by the acts of its officers in signing and issuing farm loan bonds and by the acts of the Farm Credit Administration in authorizing their issue."

It seems to me that, by reason of these three sections, as the business of loaning on farm mortgages followed by the bank in this case was the business for which it was specially created, if there were any irregularity in the method by which the loans were made on the mortgages, it did not impair or invalidate the mortgages, or the bonds that were issued by the bank.

Furthermore, as all the issues of the farm loan bonds of the bank were duly approved by the farm credit administration they were cured of any irregularity and the bank issuing them was bound by them.

Consequently, it seems to me the case of Ward v. Joslin, 186 U.S. 142, 22 S.Ct. 807, 46 L.Ed. 1093, is not controlling, because it involved an excursion by a bank into a realm wholly outside of the powers conferred on it, and not merely an irregularity of procedure within the powers conferred on it.

Also in connection with the doctrine of Ward v. Joslin, supra, it must be remembered that there was not any such provision in the Kansas constitution or statutes there involved, validating irregularities as we have here in Section 771, subsection 11, and in Section 871.

**4.** As a matter of fact, this is a case in which stockholders have received the benefit of the moneys which the bondholders now seek to recover, and after having acquiesced for a long time in the procedure by which the bank made its loans, the stockholders cannot now properly assert as a defence to their liability on their stock the claim that they were not liable for any obligations to the bondholders. In this connection the following cases are of interest: Lamb v. Abendroth et al., 268 Mich. 73, 255 N.W. 447, 448; Kipp v. Miller, 47 Colo. 598, 108 P. 164, 167, 135 Am.St.Rep. 236; and Kent v. Quicksilver Mining Co., 78 N.Y. 159, 187.

**5.** It must be remembered in approaching the matter, as a practical question, that when the bondholders bought farm loan bonds issued by the bank they relied (a) on the credit of the bank itself, (b) on the security afforded by all the mortgages which lay behind the bonds, and (c) on the statutory liability of the stockholders for the amount equivalent to the par value of their stock.

Certainly the directors of the bank, chosen by the stockholders, could not by interstitial irregularities in their methods of making loans on mortgages, or by bad management, owing to which the bank became insolvent, deprive the creditors of the bank of their statutory right against stockholders which was a part of the security on which they bought their bonds. Cf. Van Tuyl v. Robin, 80 Misc. 360, 368.

142 N.Y.S. 535, affirmed in 160 App.Div. 41, 145 N.Y.S. 121, and in 211 N.Y. 540, 105 N.E. 1101.

■ The defence of ultra vires, the burden of establishing which falls on the defendants, must for the reasons above stated fail.

■ Second: On the second branch of the question of ultra vires we turn to another set of sections in the Federal Farm Loan Act.

Section 822, 12 U.S.C.A., under the caption of Voluntary Liquidation, provides: "Any joint stock land bank organized and doing business under the provisions of this chapter may go into voluntary liquidation by making provision to be approved by the Farm Credit Administration, for the payment of its liabilities."

Then there is a provision that the bank which is going into liquidation can only do so on the vote of at least two-thirds of its stockholders.

That was the only law with regard to liquidation of joint stock land banks which was outstanding in 1923, at the time when the Southern Minnesota Land Bank of Redwood Falls—hereinafter referred to as the Redwood Bank—took over the First Joint Stock Land Bank of Minneapolis—hereinafter referred to as the First Bank.

I hold, under the authority of Central Railroad & Banking Company v. Georgia, 92 U.S. 665, 676, 23 L.Ed. 757, and the cases cited therein, that the combination of the two banks was what is properly called a merger.

I find that the two banks involved in this merger complied with the law applicable to them in all respects.

A merger is not forbidden by the Federal Farm Loan Act. All that is required by that act is that the Farm Loan Board should approve of the provision for meeting the payment of the liabilities of any joint stock land bank which goes into voluntary liquidation.

The Federal Farm Loan Board did approve of the contract for the voluntary liquidation of the First Bank—which was made with the Redwood Bank—under the date of May 31, 1923, and which was implemented during June and July of that year. This contract provided that the First Bank should liquidate, and its assets and liabilities should be taken over by the Redwood Bank, which is an earlier name for the bank here in litigation, and that a certain sum,—

upwards of $636,000—was to be paid to the First Bank by the Redwood Bank under that contract.

It has not been shown that this sum of $636,000 was ever paid. It is perfectly obvious, however, that this fact does not constitute any disadvantage to the stockholders of this bank as successor to the Redwood Bank because if it had been paid it would have come out of the assets of the Redwood Bank and have gone over to be distributed, I presume, among the stockholders of the First Bank.

What actually appears to have happened is that, to a large extent, at least, the shares of the stock of the First Bank were exchanged on the merger for shares of stock of the Redwood Bank.

The provisions of the statute as to the territory for loans of joint stock land banks is indicated in Section 818 of the Federal Farm Loan Act—Title 12, United States Code, Section 818, 12 U.S.C.A. § 818,—provides inter alia: "That no loans shall be made which are not secured by first mortgages on farm lands within the State in which such joint stock land bank has its principal office, or within some one State contiguous to such State."

What we have been referring to as the Redwood Bank, which is the predecessor of the present bank, did its loaning in Minnesota and South Dakota. Consequently its loans are territorially in accordance with its powers because it made its loans on farms within the state where it had its principal office, Minnesota, and a contiguous state, South Dakota.

The First Bank, also with its principal office in Minnesota, made its loans on farms in Minnesota and in Iowa, a contiguous state.

After the merger occurred the situation was that there were some Iowa mortgages—I believe the amount of them was stated to be about $250,000—in the hands of the Redwood Bank or of the Farm Loan Board which had been assigned to it by the First Bank and were then being held for the Redwood Bank.

This, however, could hardly be said to constitute any irregularity whatever in the merger for it was approved by the Federal Farm Loan Board as a method of liquidating the First Bank.

It is noteworthy in this connection, moreover, that the Iowa mortgages have been liquidated and there are not any

Iowa mortgages whatever, or any Iowa real estate set forth in the schedules of the property now owned by the successor to the Redwood Bank, which is the bank involved in the present case. Therefore, the irregularity, if any, was not only cured by the provisions of the statutes, Section 771, subsection 11, and Section 871, but was also cured by the liquidation of those Iowa mortgages of the First Bank, which have now entirely disappeared.

I do not find any other irregularity of any kind in respect of the merger.

Mr. Spiegelberg has made a motion in behalf of his clients—and other defendants' counsel present at the trial have joined him in it—to take further evidence on the subject of ultra vires as set forth in their additional affirmative defences. I deny this motion, giving the defendants an exception to my ruling, because I think that what I have said covers sufficiently the principles involved, and I do not think there is a basis for going further into the question of ultra vires which, it seems to me, has been fully explored in the present case. I do not ground my denial of this motion on the failure of the defendants to get this further proof as to ultra vires before trial or to adduce thereat evidence thereon in respect of this comparatively recently pleaded issue.

 F. This suit has, as above indicated, been dismissed as against several defendants on the ground either that they are still infants or that they were infants when the stock was put in their names and that they had made timely disaffirmance of their liability after reaching their majority. As to all other registered owners of stock on the books of the bank at the time of the receivership, I hold that they are liable, even though they may not have been also beneficial owners of the stock. Cf. Kenyon v. Fowler, 2 Cir., 1907, 155 F. 107, affirmed 215 U.S. 593, 30 S.Ct. 409, 54 L.Ed. 341.

 But if they are not beneficial owners and the beneficial owners are also parties hereto, then the primary liability shall be that of the beneficial owners, and the registered owners shall be secondarily liable only to the extent that the beneficial owners do not or cannot satisfy the decree.

G. The decree as against Paul Fox cannot be the same as against Mr. Spiegelberg for I am not satisfied that he has made as full and true a discovery as was within his power. The Plaintiff's attorneys may propose in respect of him such decree as they consider meets the situation herein found.

XII. *As to Costs and Disbursements.*

As the amount recoverable against each defendant is fixed by the 100% assessment multiplied by the number of shares owned by him, I shall not attempt to state the amount due from each defendant, but shall leave that to the plaintiff's attorneys to include in the final decree which the plaintiffs may have with costs and with taxable disbursements equally divided amongst the defendants against whom the final decree is entered.

XIII. *As to the Formal Findings of Fact and Conclusions of Law.*

Before the final decree is presented for settlement the plaintiffs must prepare findings of fact and conclusions of law consistent with the foregoing memorandum opinion but further developed as they are advised, and serve them on the attorneys for the defendants, whom they seek to include in the final decree with ten days notice of settlement.

The defendants' attorneys may then serve suggestions as to changes in the findings so proposed.

In order to facilitate any changes which I may deem appropriate, I suggest that the findings and conclusions submitted by the plaintiffs' attorneys be typed with triple spacing.

Only the findings approved by me will be filed as part of the record herein.

XIV. After costs are taxed and the findings of fact and conclusions of law are signed by me, a final decree may be noticed for settlement and submitted to me through the Clerk's office.