[Civil No. 4175.   Filed July 12, 1940.]

[104 Pac. (2d) 169.]

E. F. GARLINGTON, Appellant, v. EMMETT Mc-
LAUGHLIN, Appellee.

Mr. V. L. Hash, for Appellant.

Messrs. Moore & Romley, for Appellee.

ROSS, C. J.—This action was brought by E. F. Gar-
lington against Emmett McLaughlin for damages for

personal injuries he sustained in an automobile accident on the 30th day of July, 1935, between 1:30 and 2:00 o'clock A. M., at a point east of the intersection of Van Buren and 16th Streets in Phoenix.

The complaint alleges that defendant was going east on Van Buren Street and (1) negligently ran into plaintiff and injured him; (2) that defendant was negligently traveling on the left or north side of the road in violation of law; (3) that he was traveling at a speed in excess of fifty miles an hour, a speed greater than was consistent with ordinary care considering the width of the road and the travel thereon; also that where the accident occurred was a residential district and the lawful limit therein was twenty-five miles an hour; and (4) that defendant did not keep a proper lookout for plaintiff, who was walking across Van Buren Street from the south to the north and was on the left half thereof when struck; that if defendant had been in the exercise of ordinary care he could have seen plaintiff's danger and avoided running into him by stopping or slackening the speed of his automobile or by keeping on the right side of the highway.

The defendant's answer consists of a general denial and an allegation that plaintiff's injuries were the result of his sole negligence, or his sole and contributory negligence.

The case was tried by the court with a jury and resulted in a verdict and judgment in favor of defendant. The plaintiff has appealed.

The first assignment of error is:

"That the court erred in refusing to grant plaintiff a new trial for the following reasons:

"(a) That the verdict of the jury was contrary to the weight of the evidence.

"(b) That the verdict of the jury and the judgment rendered thereon is contrary to the evidence.

"(c) That the evidence conclusively established the negligence of defendant McLaughlin in the operation

of defendant's car and that the injuries resulting to the plaintiff were caused by such negligent operation and that there was no evidence of plaintiff's contributory negligence.

"(d) That the evidence under the last clear chance doctrine conclusively shows that the defendant could have avoided the accident and injury to plaintiff by the exercise of ordinary care and by keeping a lookout for pedestrians in the highway."

Assignment two is a repetition of the grounds (a), (b), and (c), and assignment three is a repetition of ground (d) of assignment number one. Assignments 4, 5, 7 and 8 are directed at the court's instructions.

■ These assignments, of course, require an examination of the evidence. If there was any substantial evidence to support the jury's verdict, and the instructions of the court were not erroneous and prejudicial, it is the clear duty of this court to affirm the judgment.

The defendant in his brief has stated the evidence for both the plaintiff and the defendant and since the plaintiff has made no objection to this statement or questioned its correctness in his reply brief, we adopt it in the main, making only slight changes in conformity with the facts.

The evidence for plaintiff was that he was a physician and surgeon with offices in the rear of 1524 East Van Buren Street, Phoenix; that about 11:00 o'clock the night of the accident he went to the Owl Cafe to see the night bartender on some business, and remained there until about 1:30 A. M.; that he did not take a drink all day; that as he went out of the Owl Cafe he started to cross Van Buren Street in a northerly direction at a point about 231 feet east of the intersection of 16th Street, and the automobile that struck him was then quite a distance west of the intersection; that he walked across the street at his normal gait and he saw the automobile again just as

he crossed the middle of the street; that it had then passed 16th Street; that he turned his head to see if there was anything coming from the east and proceeded across and again glanced to the left and the car was almost upon him; that he tried to get out of the way but it hit him and the rear wheel passed over his right leg; that when he was struck he was five or six feet north of the center line of Van Buren Street.

On cross-examination he testified: That when he first saw the car it was about one-half way between 15th and 16th Streets; that he thought he had ample time to cross the street before the car contacted him beyond the center line of the street; that the left front wheel of the car struck him; that he thought the car was going faster than fifty miles an hour; that when he first saw defendant's car it was on the south side of Van Buren Street going east; that it turned north across the center line of the street, about fifteen feet west of where he was knocked down; that at the time it crossed 16th Street it was on the south side of the street but it crossed four or five feet over to the north side about fifteen feet west of the point where it struck him; that the place at which he crossed the street was not a regular pedestrian crossing but was frequently used by pedestrians; that, while he did not keep his eye continuously upon defendant's car from the time he first saw it until he was hit, he knew approximately where the car was as he was crossing the street since it was in his line of vision.

There were a number of witnesses for the plaintiff whose testimony corroborated that of the plaintiff as to where and how the accident happened.

The defendant's testimony was, in substance, as follows: That defendant was a clergyman (priest) attached to St. Mary's Church in Phoenix, Arizona; that on the night of the accident, in response to a call from the "Tempe T. B. hospital," he left the monastery

about 1:50 or 1:55 A. M. and proceeded direct from Third Street, where the monastery is located, out East Van Buren Street until he reached the place of the accident; that he was driving around forty to forty-five miles an hour until he struck the plaintiff; that he was driving on the right side of the center line of Van Buren Street and did not at any time after reaching 16th Street drive to the north side of the center line of the street; that the street was clear and there was no traffic moving as he approached the Owl Buffet (Cafe), and he did not see anyone at all until he got right there and plaintiff loomed up in front of him; that the collision took place a little to the west of the Owl Buffet; that when he reached a point approximately opposite the Owl, the plaintiff loomed up in front of the car, or to the left side of the car; that he attempted to swerve to the right to get out of the way; that he applied the brakes but whether they actually took effect before he hit plaintiff he did not know; that he realized from the thud that he had hit plaintiff so he turned and came back; that when he first saw plaintiff he was a few feet in front of defendant, from five to ten, maybe twelve feet; that he seemed to be trying to get out of the way and seemed to be coming from the north to the south; that he thought it was the left end of his fender that struck plaintiff; that after the accident he turned around and came back to where plaintiff lay and told plaintiff he was a priest, and plaintiff asked for an ambulance; that he offered to take plaintiff to the hospital in his car but he wanted an ambulance; that someone said there was a phone in the Owl and defendant went into the Owl and phoned the Whitney Funeral Home for an ambulance; that there was quite a crowd and defendant asked them to take care of plaintiff until the ambulance arrived as he, defendant, had a call from Tempe to attend a man who was dying.

William L. Murphy, a witness in behalf of defendant, testified that on the morning of July 30, 1935, he personally received a call, at the J. T. Whitney Funeral Home, for an ambulance to be sent out East Van Buren Street, which call he answered; that when he put plaintiff into the ambulance he took hold of his shoulders and his face was within six to eight inches of Murphy's head and that he recognized the odor of liquor on plaintiff's breath.

Nathan F. Woody, also a witness in behalf of defendant, testified that he knew plaintiff and lived across the street from him; that he saw plaintiff, between sundown and dark on the evening before he got hurt, at the drug store on the corner of 16th Street and Van Buren; that he looked like he had been drinking and that he was just like a man that was drunk.

There was evidence that plaintiff did indulge in intoxicating liquors at times but that on the 30th of July, 1935, he had not tasted liquor of any kind.

In view of the evidence as we have outlined it, we do not agree with plaintiff's contention that the trial court erred in not granting his motion for a new trial on any of the grounds (a), (b), (c) and (d). As to whether "the verdict . . . was contrary to the weight of the evidence" or "contrary to the evidence," we are not in a position to say. There certainly is some evidence of very substantial character supporting the verdict. In the first place, it was for the jury to weigh the evidence and decide which way it preponderated. Evidently the trial court was satisfied that the verdict found support in the evidence otherwise it would have granted the motion for a new trial. The court, like the jury, saw and heard the witnesses and from its vantage point refused to disturb the verdict, as it might or should do if the verdict was contrary to the weight of the evidence or not supported by the evidence.

Ground (c) asserts that plaintiff was free from negligence and that the accident was conclusively shown to have occurred through defendant's negligence. That question was submitted to the jury, which evidently thought it was caused by plaintiff's negligence, or the concurrent negligence of the plaintiff and defendant. Whether it was the one or the other was the issue made by defendant's answer. If both were negligent and the accident was caused thereby, neither was liable to the other, unless under the last clear chance doctrine the defendant, by the exercise of reasonable care, could have, after he discovered plaintiff's peril, avoided running into him.

That brings us to ground (d) of the motion for a new trial. Whether defendant could have avoided the accident, after discovering plaintiff in his pathway as he testified, was submitted to the jury by the following instruction:

"You are further instructed that if you find that the plaintiff was walking north directly across Van Buren Street at right angles toward the course of the approach of the car driven by the defendant and in imminent danger of being struck by the car of the defendant McLaughlan, and that plaintiff was at said time oblivious to his danger and ignorant of the nearness of defendant's car and that the driver of the said automobile saw or by the exercise of ordinary care might have seen the said plaintiff so walking north across the said street and in a position of imminent peril from defendant's car and if you find and believe from the evidence that he was in such a position of imminent peril that the defendant in the exercise of ordinary care would have seen that plaintiff was oblivious of his peril in time thereafter by the exercise of ordinary care on the part of the defendant and by means of appliances at hand and with reasonable safety to the defendant and his car to have warned plaintiff and to have stopped said car or to have changed the course thereof thereby averting the accident and that he negligently failed to do so, and that

by reason of and as a direct result of same the defendant's car struck plaintiff and plaintiff was injured thereby, then you will find for the plaintiff.''

This instruction was requested by plaintiff and was given as requested. The jury must have concluded that defendant had no chance to avoid the accident.

■■ The instruction on the question of contributory negligence was as follows:

''If after a complete survey of this evidence in your deliberations you have reached the conclusion that both of the parties were negligent, that the defendant was negligent in one or more of the particulars, and that likewise plaintiff himself was negligent, as is alleged, in one or more of the particulars, and that such negligence, however slight, contributed to the bringing about of the accident, then the law leaves the parties where it finds them. In other words, you are not called upon to decide which party is more negligent or more to blame. The law provides that when that state of affairs exists and you find that the evidence here from the witness stand shows that they were both negligent, and that their negligence contributed jointly or otherwise, to bring about the casualty, then, the law leaves them just where it finds them and the plaintiff would not be entitled to recover; the verdict would be for the defendant in that case, because the plaintiff has instituted the case and has not established the case.''

This instruction, we think, correctly states the law. Plaintiff criticizes it in his brief because it omits the last clear chance rule. This and other instructions, including the instruction on the last clear chance, must be construed together. *Arizona Eastern R. Co.* v. *Cox,* 27 Ariz. 469, 233 Pac. 1102.

Assignments two and three are disposed of by what we have heretofore said in passing upon assignment number one.

■ The assignments based upon instructions given do not conform with the rules of this court. Each of such assignments begins: ''That the court erred in

giving the following instruction in behalf of defendant, to wit:'' Then follows a copy of the instruction objected to without any statement whatever as to why it was error to give the instruction. Section 4, Rule XII of the Supreme Court, reads:

"If the assignment of error be to the giving of instructions to the jury by the lower court, the appellant must state specifically wherein the instruction complained of is erroneous in its statement of the law applicable to the case, or to any particular fact or facts therein.''

We have repeatedly reminded counsel that this rule was made for the purpose of aiding the court in determining the law of the case and that it should be complied with. *Thornburg* v. *Frye,* 44 Ariz. 282, 36 Pac. (2d) 548, and cases there cited. Notwithstanding the failure of plaintiff to comply with our rules, we have examined the instructions complained of and are of the opinion that they are correct when construed with all the other instructions, which were very full and voluminous for both the plaintiff and the defendant.

All of the acts of negligence alleged in the complaint were submitted to the jury with appropriate instructions.

After a careful and thoughtful examination of the record, we feel that the plaintiff was given a fair trial before an impartial jury, and that the verdict and judgment of the trial court must stand. It is that kind of a case in which the conflicts in the evidence are quite pronounced and sharp, and in which no tribunal could better or more justly resolve the conflicts than a jury. If the jury had found for the plaintiff upon the facts and the law as given, this court would have felt bound by its verdict.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.