**BRYAN et al. v. BALL et al.**

**No. 11782.**

Circuit Court of Appeals, Eighth Circuit.

Jan. 16, 1941.

Rehearing Denied Feb. 14, 1941.

Arthur J. Freund, of St. Louis, Mo. (Daniel Bartlett and Jesse McDonald, both of St. Louis, Mo., on the brief), for appellants.

Arthur V. Lashly, of St. Louis, Mo. (Jacob M. Lashly, of St. Louis, Mo., on the brief), for appellees.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This suit in equity arising under the laws of the United States (the Federal Farm Loan Act of July 17, 1916, amended March 4, 1923, 12 U.S.C.A. Ch. 7, § 641 et seq.) was brought in November, 1932, by and on behalf of creditors of the insolvent St. Louis Joint Stock Land Bank against all of its stockholders to obtain and recover upon an assessment on account of stockholders' liability in accordance with 12 U.S.C.A. § 812. Many stockholders had transferred their shares of stock to the Land Bank Securities Company, a Missouri corporation, prior to the declaration of insolvency of the bank on the 1st day of June, 1932, and the plaintiffs charged that such transfer had been made in fraud of the creditors of the bank and had not operated to discharge the stockholders' liability. In January, 1939, the court after trial of the issues as to the sufficiency of the bill of complaint, the insolvency of the bank, the necessity for assessment against stockholders and the amount thereof, and the transfers of stock of said bank to the Land Bank Securities Company, entered findings of fact, conclusions of law and an interlocutory decree adjudicating such issues in favor of the plaintiffs and ordering an assessment against all stockholders in the amount of 100 per cent of the par value of their stock. Judgments were entered against some 135 stockholders but some 35 defendants, including these appellants, had pleaded special defenses requiring separate trials and jurisdiction of the cause was reserved for the trial of such special defenses.

Thereafter appellants as executors of the will of P. Taylor Bryan, deceased, pleaded that although their testator had been a stockholder owning 150 shares of the stock of the St. Louis Joint Stock Land Bank of the par value of $15,000 prior to April, 1932, that on or about that day he sold his said stock to one E. D. Nims in good faith for valuable consideration, and that said E. D. Nims was at the time fully solvent and able to pay any liability on account of his stock ownership and had agreed to pay any sums necessary to settle any judgment that might be entered in respect to the stockholders' liability in this case. The executors alleged that their testator had sold and delivered his said stock

to one E. R. Bruce as agent for said E. D. Nims. They denied stockholders' liability in respect to the 150 shares.

Trial of the issues resulted in a decree and judgment in favor of the plaintiffs for $15,000, costs and interest from February 14, 1939, and the executors have appealed.

The trial court made findings of fact and conclusions of law as follows:

1. That P. Taylor Bryan was, on or about April 9, 1932, the owner of 150 shares of the common stock of the St. Louis Joint Stock Land Bank, evidenced by Certificate No. 364 for 50 shares issued February 15, 1923, No. 297 for 50 shares issued January 6, 1923, No. 563 for 20 shares issued on January 9, 1925, No. 744 for 20 shares issued March 2, 1925 and No. 1055 for 10 shares issued December 1, 1925.

2. That on or about the 9th day of April, 1932 the said Bryan endorsed said certificates in blank and sold and delivered said certificates to one E. R. Bruce of the City of St. Louis, who was at that time wholly insolvent and has remained insolvent continuously to the present time and is now insolvent; that said Bruce paid to said Bryan for such shares of stock a sum equivalent to 25¢ per share, and that said Bruce in purchasing said stock acted solely for himself and not as the agent for any other person and that said stock was paid for out of the funds of said Bruce.

3. That on or about said 9th day of April, 1932, or shortly thereafter, said E. R. Bruce delivered said certificates of stock to the St. Louis Joint Stock Land Bank, and caused them to be cancelled and a new certificate for 150 shares of the common stock of said St. Louis Joint Stock Land Bank to be issued in lieu thereof to the Land Bank Securities Company; that said new certificate was thereupon delivered to the Land Bank Securities Company in exchange for an interim receipt of said Land Bank Securities Company, No. 289, for 75 shares of Class A stock of said Land Bank Securities Company, having been exchanged at the current ratio of exchange under the Plan of Reorganization, to-wit, two shares of St. Louis Joint Stock Land Bank stock for one share of Class A stock of the Land Bank Securities Company, and said interim receipt was issued to E. R. Bruce and delivered to him, and that said interim receipt is still outstanding on the records of the Land Bank Securities Company in the name of E. R. Bruce.

4. That thereafter on or about the 13th day of April, 1932 said Bruce endorsed said Interim Receipt No. 289 in blank and delivered it to the office of E. D. Nims, the President of Land Bank Securities Company, together with a statement indicating that a sale of said interim receipt had been made to Land Bank Securities Company and thereafter the personal check of said E. D. Nims was given to said Bruce in payment for said interim receipt.

5. That said Bruce at no time delivered to said Nims, either individually or as President of Land Bank Securities Company, any shares of stock in the St. Louis Joint Stock Land Bank.

6. That Land Bank Securities Company was in April, 1932 and at all' times subsequent thereto has been and is now wholly without assets and unable to respond to stockholders' liability.

7. That on said 9th day of April, 1932 and for a long time prior thereto the St. Louis Joint Stock Land Bank was in a failing condition, and that said Bryan upon said date and for a long time prior thereto knew that said Bank was in a failing condition, and knew that its stock was practically worthless.

8. That P. Taylor Bryan died in June, 1932, after the Receiver for the St. Louis Joint Stock Land Bank was appointed by the Farm Loan Board, and that the defendants Katherine C. Bryan and St. Louis Union Trust Company were appointed and are now the duly appointed, qualified and acting executors of the Estate of said P. Taylor Bryan and were acting as said executors at the time this action was commenced.

9. The Court hereby reaffirms and adopts the findings of fact heretofore filed and entered herein on the 25th day of January, 1939, and such findings of fact are by reference incorporated herein and made a part of these findings of fact as fully as if set out at length herein.[1]

### Conclusions of Law.

The Court concludes:

1. That P. Taylor Bryan was, prior to April 9, 1932, the record owner and the actual owner of 150 shares of stock in the

[1] The reference is to the findings upon the interlocutory decree and judgment described in the first paragraph of this opinion and not attacked here.

St. Louis Joint Stock Land Bank; that the sale and delivery of certificates evidencing said shares of stock to E. R. Bruce for 25¢ per share on April 9, 1932, under the facts and circumstances existing at that time, was a sham and a fraud on creditors, and such sale and delivery of said certificates was ineffectual to relieve said P. Taylor Bryan from his liability as a stockholder in said St. Louis Joint Stock Land Bank; that said P. Taylor Bryan continued to be the record owner and the beneficial owner of said stock after the sale and delivery thereof to E. R. Bruce on said 9th day of April, 1932, and was on the 1st day of June, 1932 the record and beneficial owner of said 150 shares of stock in said St. Louis Joint Stock Land Bank, and the defendants as his personal representatives in charge of the estate of said P. Taylor Bryan, now deceased, are liable to the creditors under Section 812, Title 12, U.S. C.A.

2. The Court hereby reaffirms and adopts the conclusions of law heretofore filed and entered herein on the 25th day of January, 1939, and such conclusions of law are by reference incorporated herein and made a part of these conclusions of law as fully as if set out at length herein.[2]

The appellants do not assail the court's finding that Mr. Bryan endorsed his certificates in blank at the time he caused them to be delivered to Mr. Bruce, or that Mr. Bruce paid him only the relatively insignificant sum of $37.50 for the 150 shares of $15,000 par value. Nor do they question the findings that Mr. Bruce paid said sum of $37.50 out of his own funds, nor that Mr. Bruce was then wholly insolvent and that Mr. Bryan knew the failing condition of the bank and the practical worthlessness of his shares.

But they contend that there was no sufficient evidence to sustain the trial court's finding and conclusion that Mr. Bryan sold his stock to Mr. Bruce. They insist that the proof was contrary to said finding and established that Mr. Nims was the real purchaser and the actual owner at the time of the assessment.

The documentary evidence in the record accords exactly with the findings of the trial court and lends no support to the contention that Mr. Bryan sold his stock in the Joint Stock Land Bank to Mr. Nims.

Although a personal check of Mr. Nims for $89.50 payable to Mr. Bruce was given to Mr. Bruce, as stated by the court in its fourth finding, the documentary evidence tends to support the finding that the check was given in payment for the interim receipt of the Land Bank Securities Company, delivered to Mr. Bruce, endorsed by him and sold by him to the Land Bank Securities Company, of which Mr. Nims was president.

But the appellants contend that oral testimony given by Mr. Bruce and Mr. Bryan's son, Henry Bryan, and by John W. Mack, who had charge of keeping personal accounts for Mr. Nims, considered with the writings in evidence, prove that Mr. Bruce was acting merely as the agent of Mr. Nims in buying the Bryan stock, that Mr. Nims was the undisclosed principal in the transaction, and that Mr. Nims became the actual owner of the stock and was such owner at the time of the assessment.

Mr. Henry Bryan, the son of P. Taylor Bryan, deceased, testified that when he made delivery of his father's stock certificates to Mr. Bruce at his father's direction, Mr. Bruce stated, "I can't tell you whose name the stock is going to be transferred into, but it will be transferred out of your father's name." Mr. Bruce testified that he did not have any standing order from Mr. Nims to take off his hands any of the Joint Stock Land Bank shares that he (Bruce) might buy, but in answer to the question, "You had a specific order from him (Mr. Nims) that he would buy from you the stock of Mr. Bryan if you bought it?" Mr. Bruce answered, "I told him I could buy this stock and asked him if he wanted it. And he said he did. So I told Mr. Bryan I would take it." To the further question, "And you did take it?" he answered, "I did."

"Q. Then you resold it to Mr. Nims? A. That is right."

"Q. Did you solicit the purchase of these shares from Mr. Bryan or did he solicit that from you? A. I don't remember."

We think this testimony indicates that Bruce bought the stock intending to resell it, but other oral testimony given by Mr. Bruce may be said to lend support to the contention of the executors that Mr. Bruce had an order from Mr. Nims to buy

[2] Referring to the conclusions of law in support of the interlocutory decree and judgment not attacked here.

the Bryan stock as his (Mr. Nims') agent, and that the stock was so bought from Mr. Bryan by Mr. Bruce for Mr. Nims.

In view of the record of the surrender of the Bryan stock to the St. Louis Joint Stock Land Bank and its transfer from that bank to the Land Bank Securities Company, and the issuance by that company of its interim stock certificate to Bruce and the written statement of Bruce showing a sale of the interim receipt to Land Bank Securities Company, and of the oral testimony as a whole, we cannot say that the trial court's fact finding that Bruce acted for himself and not as an agent in buying the Bryan stock was clearly erroneous. Mr. Nims was not called as a witness and the testimony of his bookkeeper shows no entries in the personal ledgers of Mr. Nims indicating that Mr. Nims purchased or owned the Bryan stock in the joint stock land bank.

The trial court had before it the records which were made contemporaneously with the transaction, and it was peculiarly within the province of the trial court to judge the credibility of the witnesses relied upon by the executors to fasten the stockholder's liability upon Mr. Nims and to relieve themselves. Admittedly Mr. Nims had not given Mr. Bruce any written order directing Mr. Bruce to buy for him the 150 shares of stock belonging to Mr. Bryan, and the testimony as a whole amply supports the trial court's finding that Mr. Bryan sold his stock for a sum trifling in comparison with its par value; that he well knew the failing condition of the bank at the time and that the person to whom he sold the stock was Mr. Bruce, a wholly insolvent person; that Mr. Bruce paid $37.50 for the stock out of his own funds, and that Mr. Bruce acted solely for himself in making the purchase and not as the agent of any other person.

We find no error in the court's conclusion that the sale was ineffectual to relieve Mr. Bryan or his estate from stockholder's liability. The liability of shareholders in the Joint Stock Land Banks is governed by the same principles applicable to the liability of stockholders in the national banks, 12 U.S.C.A. § 812, Todd v. Russell, 2 Cir., 104 F.2d 169, 171, 172; Holmberg v. Anchell, D.C., 24 F.Supp. 594, affirmed Holmberg v. Merrick, 2 Cir., 110 F.2d 1022; Russell v. Todd, 309 U.S. 280, 285, 286, 60 S.Ct. 527, 84 L.Ed. 754; Cf. Christopher v. Brusselback, 302 U.S.

500, 58 S.Ct. 350, 82 L.Ed. 388. As Mr. Bryan sold his stock to an insolvent person knowing that the bank was in a failing condition and that the stock was practically worthless, he remained liable upon the assessment and at his death his estate was chargeable. Pufahl v. Estate of Parks, 299 U.S. 217, 223, 57 S.Ct. 151, 81 L.Ed. 133; Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571; 9 C.J.S., Banks and Banking, p. 1128, § 597; 7 Am.Jur. 96, § 117.

Affirmed.